STATE of Minnesota, Respondent,

v.

Freddie L. DILLARD, Appellant.

No. C2–84–297.

Court of Appeals of Minnesota.

Sept. 4, 1984.

Review Denied Oct. 30, 1984.

C. Paul Jones, Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Henn. County Atty., Vernon E. Bergstrom, Paul R. Jennings, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellant was convicted by a jury of simple robbery in violation of Minn.Stat. §§ 609.24 and 609.05 (1982) following a jury trial. Appellant was sentenced to 30 months in prison. On appeal, appellant contends: (1) the evidence presented at trial was not sufficient to support a conviction for simple robbery, (2) he was denied a fair trial because of alleged trial court errors and prosecutorial misconduct and (3) there were substantial and compelling reasons for the court to depart from the presumptive sentence. We affirm.

## FACTS

Between 3:15 and 3:45 p.m., April 13, 1983, a man and a woman entered Imes Grocery in Minneapolis, Minnesota. They picked up a few items and took them to the cash register. Penny Kokkila, the cashier, rang up the items but the couple decided they did not want them. Penny voided the sale. The woman then asked for change. When Penny opened the till, the man reached in and grabbed the bills in the "ten slot." Penny grabbed the man's arm and asked what he was doing. The man replied, "You know what I am doing bitch," and struck Penny in the chest with his closed fist. Penny released her grip and the couple ran out of the store with $90.00. Penny saw the couple get into a two-tone Cadillac with a large hood ornament and a bug shield.

These actions were observed by a customer, Lucinda Hardy, who was alerted to the action by the man's "jumpy behavior." She watched the activity at the counter for about two minutes and looked directly at the man's face. Hardy testified she had seen the couple in the store about three weeks before the incident. She identified Dillard as the man who took the money.

Doris Kokkila, Penny Kokkila's mother, lives across the alley from Imes Grocery. On the day of the robbery, Doris got home from work at about 3:15 p.m. When she arrived home, she found a two-tone Cadillac with a large hood ornament and a bug shield parked in front of her garage. She saw a man walking into the store and she sounded her car horn. The man came back to the Cadillac, backed it up, and then went toward the store. Doris observed the car and the man, including the sunglasses he was wearing.

After Doris parked her car, Mr. Kokkila drove in. As the two of them walked to their house, they talked about why this person had parked this car the way he did. Mr. and Mrs. Kokkila were watching from the kitchen window when the same man ran from the store, jumped in the car, and drove down the alley at a high rate of speed. Doris assumed the store had been robbed and went to check on her daughter.

After speaking to Penny and Doris Kokkila, the responding police officer broadcast descriptions of the perpetrators and the car, license number FOJ 078. At 4:05 p.m. the same day, police stopped an orange and white 1975 Eldorado Cadillac with a large hood ornament and license number FOJ 078. A pair of sunglasses and a bottle of brandy were found in the car. The car was impounded and the occupants, India Smith and Riley Phillips, were taken to Imes Grocery for a show-up. Both Penny and Doris Kokkila said Smith and Phillips were not the perpetrators. Smith and Phillips were taken to the police station and separately interrogated. A license check on the car showed it was registered to India Smith.

Phillips told police he was living at 3113 15th Avenue South and he knew the appellant from that address. Phillips also told the police he saw appellant park the Cadillac behind the apartment building at about 3:45 p.m. that day. Immediately after appellant parked the Cadillac behind the apartment, India Smith asked Phillips to go to the liquor store with her. Smith and Phillips were stopped by the police while returning from the liquor store.

Three fingerprints were taken from the impounded Cadillac. The print found on the driver's door exterior glass belonged to appellant and the print found on the interi-

or rearview mirror belonged to India Smith. The third print could not be identified.

On April 19, police conducted a photographic display for Penny Kokkila at Imes Grocery. The display consisted of five photographs. Penny made no identification. She said she did not get a very good look at the male because she was watching the female.

The same day, police showed the same five photographs to Lucinda Hardy at her home. Hardy selected appellant's photograph. A complaint charging appellant with simple robbery was issued, and on June 17 appellant was arrested at 3117 15th Avenue South, Minneapolis.

On September 19, police showed the same set of photographs to Doris Kokkila in her home. She selected the photograph of appellant. Penny Kokkila was present when the photographs were shown to her mother. She heard the conversation between the officer and her mother and saw the photograph her mother selected.

On November 12, Penny was again shown the same set of photographs. This time she selected the photograph of appellant. At the omnibus hearing, appellant's motion to suppress the November 12 identification was denied. At trial, Penny testified she saw the photograph her mother selected but did not look at it closely.

Penny Kokkila testified she was very sure of her in-court identification of appellant. Lucinda Hardy also made an in-court identification. She testified that she was almost certain appellant was the man who committed the crime. Doris Kokkila also identified the appellant in court. She was positive about her in-court identification.

Near the end of the trial, appellant moved for a mistrial when he learned that one of the jurors was a hunting acquaintance of one of the arresting officers and that the two had communicated during the trial. The trial court denied the motion after examining the juror in camera and concluding that no prejudice resulted from the relationship or contact. The prosecution substituted another arresting officer to testify as to the arrest of appellant, the facts of which were not in dispute.

The prosecution called appellant's brother as a witness, which drew an objection from appellant because the subject matter of the proffered testimony had been ruled inadmissible. Appellant's motion for mistrial was denied.

At the close of the state's case, appellant moved to elicit testimony from the defense investigator for the purpose of impeaching Lucinda Hardy's identification of appellant. The trial court denied the motion, finding appellant violated the discovery rules and that the evidence was not admissible under the rules of evidence.

## ISSUES

1. Was the evidence presented at trial sufficient to support the conviction of simple robbery?

2. Was appellant denied a fair trial by a) communication between a juror and an arresting officer, b) the state's attempt to call a witness when the subject matter of the proffered testimony had been ruled inadmissible, c) alleged improper closing arguments, d) alleged impermissibly suggestive identification procedures, e) exclusion of a defense witness, and f) alleged improper jury instructions?

3. Did the trial court err in not departing from the presumptive 30 month sentence for simple robbery?

## ANALYSIS

### I.

Appellant claims the evidence presented was not sufficient to support the conviction for simple robbery.

In reviewing the sufficiency of evidence for a criminal conviction, this court must ascertain whether a jury could reasonably conclude that the defendant was guilty of the offense charged given the facts and the record and the legitimate inferences which can be drawn from the facts. *State v. Merrill*, 274 N.W.2d 99, 111 (Minn.1978). This court must examine the

evidence in the light most favorable to the state, assuming the jury believed the evidence supporting the conviction and disbelieved the contrary evidence. *State v. Pieschke,* 295 N.W.2d 580, 584 (Minn.1980).

Appellant argues that the in-court identifications were severely impeached, making it improper for the jury to rely on them. Weighing the credibility of witnesses is exclusively the function of the jury. *Id.* The jury may believe the testimony of a witness even though his testimony has been severely impeached. In *State v. Poganski,* 257 N.W.2d 578 (Minn.1977), the Minnesota Supreme Court held the jury could choose to believe the testimony of two witnesses even though the testimony was inconsistent and contradictory and even though the witnesses had been involved in numerous fraudulent schemes. Here, three witnesses identified appellant in court as the robber: Penny Kokkila, the cashier; Lucinda Hardy, a customer; and Doris Kokkila, Penny's mother.

In addition, there is significant corroborating evidence. Police had a description and license number of the car used in the robbery. Riley Phillips testified he observed appellant use the car very close to the time of the robbery. Police verified the driving times between the scene of the robbery, appellant's residence, and the point where the car was stopped by police after the robbery. Appellant's fingerprint was found on the car, and the sunglasses that the robber wore during the robbery were found inside the car.

Alternatively, appellant contends his conviction for simple robbery is not supported by sufficient evidence because he used force simply to get away and not to facilitate the taking of the money. Minn.Stat. § 609.24 (1982) defines simple robbery as follows:

Whoever, knowing he is not entitled thereto, takes personal property from the person or in the presence of another and uses or threatens the imminent use of force against any person to overcome his resistance or powers of resistance to, or to compel acquiescence in, the taking or carrying away of the property is guilty of robbery and may be sentenced to imprisonment for not more than ten years or to payment of a fine of not more than $10,000, or both.

*Id.* Both Penny Kokkila, the cashier, and Lucinda Hardy, the customer/witness, testified when appellant reached into the open till, Penny grabbed his arm and appellant punched or pushed her. Appellant used force to overcome Penny's resistance to the taking of the money. The evidence is sufficient to sustain the conviction for simple robbery.

## II.

Appellant maintains a number of errors were made which denied him a fair trial. An accused is entitled to a fair trial as guaranteed by Article I, Section 7 of the Minnesota Constitution and the Fifth and Fourteenth Amendments of the United States Constitution. *State v. Reardon,* 245 Minn. 509, 513–514, 73 N.W.2d 192, 195 (1955). The constitutional guarantee of a fair trial, however, does not insure the accused a trial which is perfect in every detail. *State v. Billington,* 241 Minn. 418, 427, 63 N.W.2d 387, 392–93 (1954). A reversal is warranted only when an error substantially influences the jury to convict. *State v. Darveaux,* 318 N.W.2d 44, 48 (Minn.1982).

1. Appellant asserts the trial court erred by failing to grant his motion for mistrial after learning that a juror communicated with one of the arresting officers. The relevant factors to be considered are the nature and source of prejudicial matter, the number of jurors influenced, the weight of the evidence properly before the jury, and the likelihood that curative measures were effective in reducing the prejudice. *State v. Cox,* 322 N.W.2d 555, 559 (Minn.1982).

The trial court examined the juror in camera upon discovery of the contact. The juror was a hunting acquaintance of the officer. They had not seen each other in 10 or 11 years. The juror did not discuss

the case with the officer and did not know the officer was to be a witness. He said the contact would not influence him to favor any testimony. The prosecution substituted another officer to testify about the arrest. The facts surrounding the arrest were not in dispute. The evidence before the jury from which it could infer appellant's guilt was substantial. The trial court's immediate in camera examination of the juror was appropriate and it did not abuse its discretion by denying appellant's motion for mistrial.

2. Appellant next claims the trial court erred by failing to grant his motion for mistrial after the prosecution attempted to call appellant's brother as a witness. During the cross-examination of Penny Kokkila, counsel for appellant pointed out a man in the spectator section of the courtroom and asked Penny whether he looked like the appellant. The man was later identified as appellant's identical twin brother. The parties were aware appellant's brother was in jail on the day of the robbery. During a subsequent conference in chambers, the trial court ruled the jail record of appellant's brother inadmissible as irrelevant. Later, the prosecution called appellant's brother as a witness to which the defense objected. The trial court ruled appellant's brother could not be called as a witness, but denied appellant's motion for mistrial. During the charge of the jury, the court gave a cautionary instruction regarding this subject.

■ The possibility the jury was influenced by the prosecution's attempt to call appellant's brother as a witness is slight. In addition, the trial court minimized the possibility of influence by giving a cautionary instruction.

■ 3. Appellant also complains the prosecution's closing argument was improper because it demeaned the role of defense counsel. Appellant's trial counsel, however, failed to object during the trial. Defense counsel has a duty to promptly object and ask for curative instructions when the prosecutor makes improper statements in closing arguments. *State v.*

*Rose,* 353 N.W.2d 565, at 570 (Minn.Ct. App.1984). Where defense counsel fails to make a timely objection, the right to have the issue reviewed on appeal is forfeited. *Id.; State v. Russell,* 330 N.W.2d 459, 461 (Minn.1983).

■ In addition, we view the statements as harmless. During closing argument, counsel for the state argued as follows:

Now, you've listened to all those witnesses and you watched them. You've watched their demeanor, their behavior, their delivery, if you will, and they got confused. They got confused. Mr. Krieger is a skilled attorney. But is confusion the issue here? When I'm talking about confusion, what does this mean? What is the difference between a bug screen and a grill? Is that the issue, the confusion about what to call something.

The test for prosecutorial misconduct is set out in *State v. Caron,* 300 Minn. 123, 218 N.W.2d 197 (1974):

The test of determining whether prosecutorial misconduct was harmless depends partly upon the type of misconduct with which we are dealing. * * * Thus, in cases involving unusually serious prosecutorial misconduct this court has required certainty beyond a reasonable doubt that the misconduct was harmless before affirming. * * * On the other hand, in cases involving less serious prosecutorial misconduct this court has applied the test of whether the misconduct likely played a substantial part in influencing the jury to convict.

*Id.* at 127–28, 218 N.W.2d at 200. We conclude the statement was not improper and did not play a substantial part in influencing the jury.

■ 4. Appellant next argues the identification procedure by which Penny Kokkila identified him was unnecessarily suggestive and violative of his due process rights. To determine whether there has been a denial of due process, there must be a

finding that the pretrial identification was unnecessarily suggestive and it created a substantial likelihood of irreparable misidentification. *Neil v. Biggers,* ·409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *State v. Webber,* 292 N.W.2d 5, 10 (Minn. 1980). The test applicable here was set out in *Neil:*

> [T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

*Neil,* 409 U.S. at 199, 93 S.Ct. at 382; *see State v. Lambert,* 278 N.W.2d 57 (Minn. 1979).

 An analysis of the facts of this matter indicates Penny Kokkila's identification was unreliable. On April 19, six days after the robbery, Penny Kokkila was shown a set of five photographs. She indicated she could not make an identification because at the time of the robbery she did not get a good look at the man. She also indicated the sunglasses the man was wearing made it difficult for her to make an identification. On September 19, Doris Kokkila was shown the same set of photographs at her home. She selected appellant's photograph. Penny was present at the time. She heard her mother converse with the officer about the description of the perpetrator and she saw the photograph her mother selected. On November 12, seven months after the crime, Penny selected appellant's photograph from the same set shown to her mother and to Penny earlier. This situation closely resembles the successive lineups which have often been denounced. *See Webber,* 292 N.W.2d at 10; *State v. Witt,* 310 Minn. 211, 213, 245 N.W.2d 612, 615 (1976).

 Although the procedure by which Penny Kokkila identified appellant was unnecessarily suggestive, it did not create a substantial likelihood of irreparable mis-

identification. Appellant was positively identified by two other eyewitnesses who were not exposed to suggestive identification procedures. In addition, Penny was cross-examined by appellant's trial counsel regarding her identification of appellant. "Juries are not so susceptible that they cannot measure intelligently the weight of identification testimony that has some questionable feature." *Manson v. Brathwaite,* 432 U.S. 98, 116, 97 S.Ct. 2243, 2254, 53 L.Ed.2d 140 (1977).

 5. Appellant next argues the trial court erred by excluding a defense witness whose testimony was to be used to impeach Lucinda Hardy's identification of appellant. During trial, Hardy identified appellant as the person she saw commit the robbery. On cross-examination she stated that on a scale of one to ten, she was level nine certain appellant was the man she saw commit the crime. Appellant's trial counsel also asked Hardy if she told a defense investigator that her degree of certainty was a level seven. Hardy testified she did not remember making such a statement. Appellant's trial counsel later requested permission to call the defense investigator for the purpose of impeaching Hardy's testimony regarding her level of certainty. The trial court denied the request.

Rule 613, Minn.R.Evid. provides:

**Prior Statements of Witnesses**

\*　　\*　　\*　　\*　　\*　　\*

**(b) Extrinsic evidence of prior inconsistent statement of witness.** Extrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded a prior opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate him thereon, or the interests of justice otherwise require. This provision does not apply to admissions of a party-opponent as defined in rule 803(d)(2).

A witness may be impeached on the basis of a prior inconsistent statement only when there is a foundation that the statements are actually inconsistent. *State v. Vance,*

254 N.W.2d 353, 358 (Minn.1977). Where the inconsistency is ambiguous and vague, the trial court has discretion to weigh the possible prejudicial effect as against the beneficial effect of such evidence. *Id.* This discretion is broad.

■ Here appellant did not show the requisite foundation for impeachment. Hardy did not deny telling the investigator that her certainty as to her identification of appellant was a level seven. In addition, a witness' evaluation of his or her certainty on a scale of one to ten is subjective and inherently vague. It was appropriate for the court to weigh the prejudicial effect of the evidence against its probative value. The trial court did not abuse its discretion by excluding the defense investigator's testimony.

■ 6. Appellant asserts the trial court erred by instructing the jury as follows:

While it is your duty to accept as true the uncontradicted testimony of unimpeached witnesses which was given with apparent frankness and candor, still you are not obliged to accept the testimony as true merely because there was no direct testimony contradicting it. If it contains contradiction which, standing alone, or in connection with other evidence in the case, furnishes a reasonable ground for believing it is not true, you may disregard it.

This specific language was reviewed without disapproval in *State v. Edwards,* 343 N.W.2d 269, 277 (Minn.1984). Furthermore, the specific instruction must be read in the context of the jury instructions as a whole. *State v. Brouillette,* 286 N.W.2d 702, 708–09 (Minn.1979). In such a context, the instruction was clearly proper.

### III.

Appellant's final argument is that there are substantial and compelling reasons for departing from the presumptive 30 month sentence for simple robbery. In *State v. Kindem,* 313 N.W.2d 6 (Minn.1981), the Minnesota Supreme Court stated:

Minn.Stat. § 244.11 (1980) permits the appeal in this case and we do not intend entirely to close the door on appeals from refusals to depart. However, we believe that it would be a rare case which would warrant reversal of the refusal to depart. As we stated in *State v. Garcia,* 302 N.W.2d 643, 647 (Minn.1981), the Guidelines state that when substantial and compelling circumstances are present, the judge 'may' depart. This means that the trial court has broad discretion and that we generally will not interfere with the exercise of that discretion.

*Id.* at 7.

■ The appellate courts ordinarily will not interfere with a sentence which is within the presumptive sentence range even if there are grounds justifying departure. *State v. Back,* 341 N.W.2d 273, 275 (Minn.1983). The trial court is in a better position than the appellate courts to determine whether circumstances warrant departure. *State v. Sherwood,* 341 N.W.2d 574, 577 (Minn.Ct.App.1983).

■ The circumstances which appellant offers are he played a minor role in the crime, the crime was basically a "till-tap" —a misdemeanor theft, he is amenable to probation, and he received a 30 month prison sentence rather than a 27 month stayed sentence because he was on probation at the time of the crime. Appellant had two weeks of probation left at the time of the crime. Appellant's claims he played a minor role and the crime was a misdemeanor theft are unfounded.

### DECISION

Appellant received a fair trial. The evidence presented supported his conviction for simple robbery. There are no substantial and compelling reasons for departing from the presumptive sentence.

Affirmed.