STATE of Minnesota, Respondent,

v.

**Fidencio (NMN) RODRIGUEZ TORRES, Appellant.**

No. C8–86–1359.

Court of Appeals of Minnesota.

Feb. 17, 1987.

Review Denied March 25, 1987.

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for respondent.

C. Paul Jones, State Public Defender, Kathy King, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by PARKER, P.J., and HUSPENI and FORSBERG, JJ., with oral argument waived.

## OPINION

FORSBERG, Judge.

Appellant Fidencio Rodriguez Torres was convicted of two counts of aggravated robbery, Minn.Stat. § 609.245 (1984), with reference to Minn.Stat. § 609.11 (1984), for robbing a service station. He claims Spreigl evidence was improperly admitted, that his right to a fair trial was compromised by a conversation between a witness and a juror, and that the evidence was insufficient. We affirm.

## FACTS

On March 4, 1986, around 10:45 p.m., Robin Coleman and Bryan Pike were closing the Superamerica store in Roseville. Two men entered. The heavier of the two, now wearing a dark ski mask, pointed a gun at Coleman and asked her to open the money drawer. The second man, now wearing an orange and brown ski mask, came over to the counter waving a butcher-type knife. As Coleman opened the drawer, the second man held the knife at her side and put the money into a white plastic bag. The first man ordered Coleman to open the drop box and more cash was taken. The men left after an unsuccessful attempt at getting money from the safe.

Coleman called the police and she and Pike gave descriptions of the men. Roseville police heard a radio call for a robbery in progress and within a minute observed a blue Chevrolet with two men in it. When the police turned to follow the car, it accelerated rapidly. Following a high speed chase involving several squad cars (and at times reaching speeds of 95 miles per hour), the suspect car was stopped. The two men bolted from the car. The passenger, later identified as Miguel Hernandez, was identified by Coleman and Pike as the gunman from a photo display. The driver, later identified as appellant, was not identified because Coleman and Pike said they did not get a good look at the second man in the store.

Officers found a navy blue ski mask outside the passenger door of the car. A large knife, a bank bag, and a white plastic bag containing money, coins, and a gun were found on the front seat. Two other ski masks, one orange and brown, were found in the glove compartment.

The gun was identified by Coleman as the one used in the robbery. Approximately $987 was stolen from the service station; over $970 was found in the bank bag and white plastic bag. The navy ski mask and the large butcher knife were also identified by Coleman and Pike. Hernandez, who pleaded guilty for his part in this offense, testified that he and appellant robbed the Superamerica store.

At trial, appellant testified that he heard Hernandez and four others planning the robbery. He claimed he informed Sergeant Arthur Renteria of the St. Paul Police Department, and that Renteria told him to cooperate in the robbery and gave him a camera, radio, and .45 pistol. Appellant testified that on March 4 he and five others went to the "Appleton Movie House" in Roseville. He claimed that Miguel Hernandez arrived in another car and that Miguel and Thomas Hernandez (a/k/a Thomas Perchenko) went into the Superamerica and robbed it. Appellant said that earlier he developed a headache and wanted to leave, and that the others had given him what he

thought was aspirin, but which made him dizzy. Appellant testified at first that he did not enter the Superamerica, but later admitted he did go in but only to warn the girl who worked there. According to appellant, the three others jumped out of the car during the chase, leaving himself and Miguel Hernandez in the car when it was finally stopped by the police. Following appellant's convictions for two counts of aggravated robbery, he was sentenced to two concurrent prison terms of 60 and 65 months.

## ISSUES

1. Did the trial court abuse its discretion in admitting appellant's prior aggravated robbery conviction?

2. Was appellant denied a fair trial by a conversation between a witness and a juror concerning a personal matter?

3. Was the evidence sufficient to sustain appellant's convictions?

## ANALYSIS

### I.

The trial court ruled that appellant's 1983 conviction for aggravated robbery in which a handgun and an accomplice were involved was admissible Spreigl evidence bearing on identification and for impeachment when appellant testified. The trial court saved its ruling until the close of the State's case in chief in determining whether the collateral crime was admissible. The court determined the evidence was relevant to the State's case. *State v. Jones,* 392 N.W.2d 224, 234 (Minn.Ct.App.1986). Inasmuch as the crimes were separated by only two and one-half years and the modus operandi was similar, it was within the trial court's discretion to admit the Spreigl evidence. *State v. Doughman,* 384 N.W.2d 450, 453–54 (Minn.1986). Limiting instructions were given at the time the evidence was received and in final instructions.

The evidence was also admissible as impeachment by a prior conviction under Minn.R.Evid. 609(a). Under the factors set

out in *State v. Jones*, 271 N.W.2d 534, 538 (Minn.1978), we find no abuse of discretion.

## II.

At the close of the State's case the trial court learned that a conversation occurred between a witness and a juror. The court, with counsel present, called the juror into chambers and asked about the conversation. The juror related that the witness, a police officer, approached the juror during a break. Apparently the officer had a side business and knew the juror worked for a paint shop and discussed the painting business. The conversation lasted about one minute. The trial court refused to remove the juror because nothing improper had occurred.

We find no error in not removing the juror. *See State v. Hill*, 287 N.W.2d 918, 920–21 (Minn.1979) (improper contact between bailiff and jury uninfluential and insufficient as basis for new trial); *State v. Cox*, 322 N.W.2d 555, 557–60 (Minn.1982) (no abuse of discretion in denying motion for mistrial based on improper remark by sheriff, heard by at least six jurors); *State v. Dillard*, 355 N.W.2d 167, 172–73 (Minn. Ct.App.1984) (contact by arresting officer and juror not prejudicial when officer was hunting acquaintance who had not seen juror in 10 or 11 years and did not discuss the case). *See also* Annot., 35 A.L.R. 4th 890, § 16 (1985).

## III.

We have reviewed the record and conclude the evidence was sufficient to sustain appellant's convictions. The suspect's car was sighted within a minute after the robbery and the driver accelerated to avoid capture. There was little opportunity for anyone to exit the car during pursuit as appellant claimed. When the car was finally stopped, appellant attempted to flee on foot. The passenger, Miguel Hernandez, was identified as being involved and later testified there were only two participants, himself and appellant. The victims' testimony confirmed that only two men entered the store and that both of them partici-

pated actively in the robbery. In addition, incriminating evidence was found in the car.

### DECISION

Appellant's convictions for aggravated robbery are affirmed.