STATE of Minnesota, Respondent,

v.

Randy Ronell LYNCH, Appellant.

No. C5–97–1590.

Supreme Court of Minnesota.

Jan. 21, 1999.

John M. Stuart, Minnesota State Public Defender, Rochelle R. Winn, Assistant State Public Defender, Minneapolis, for appellant.

Michael A. Hatch, Minnesota Attorney General, St. Paul, Amy Klobuchar, Hennepin County Attorney, Michael Richardson, Minneapolis for respondent.

Heard, considered, and decided by the court en banc.

## OPINION

RUSSELL A. ANDERSON, J.

Randy Ronell Lynch was convicted of the first-degree felony murder of Eric Heim in violation of Minn.Stat. §§ 609.185(3) and 609.05 (1996). Before trial, Lynch moved to dismiss the indictment on the grounds that the state's key witnesses, Jason Corporal, Robert Edwards, and Robert Ringstrom, received inducements for their testimony that were not disclosed to the grand jury. Following a pre-trial hearing to determine the facts surrounding the alleged inducements, the trial court denied Lynch's motion and subsequent appeals for discretionary review to the court of appeals and to this court were denied. On direct appeal following conviction, Lynch argues again that the indictment should be dismissed because inducements to Corporal, Edwards, and Ringstrom were not disclosed to the grand jury. Lynch also argues that he should receive a new trial because the trial court erred by

admitting evidence of an armed robbery that he committed after the Heim murder. We affirm.

On October 16, 1995, Heim was hosting a gathering of friends in his apartment. Just after 8 p.m., two assailants, dressed in dark clothing and wearing ski masks and gloves, kicked in the side door to the apartment and assaulted and then shot and killed Heim. Police recovered three .40 caliber bullet casings and three bullet fragments from the apartment, a fiber from the fence behind the apartment, and photographed tire tracks believed to be from the get-away car. Police also found 1.5 pounds of marijuana in Heim's apartment.

In December of 1995, Corporal was arrested on a warrant and confined on a charge of being a felon in possession of a firearm. Corporal was also suspected of receiving stolen property. While confined, Corporal contacted homicide officers and told them that on the evening of the murder he was leaving his mother's home, which was across the street from Heim's apartment, when he heard gunshots and saw Shawn Lewis and a man he knew as "Lucky" fleeing Heim's apartment in a blue car.

From photo lineups, Corporal positively identified both Lewis and Lynch, the man he knew as "Lucky," as the men he saw fleeing the scene of Heim's murder. Investigating officers also determined that Lynch owned a 1985 dark blue Buick Electra, a vehicle matching Corporal's description of the getaway car.

After giving his statement, officers told Corporal that if the information he gave led to the arrest of Heim's killer, he might be eligible for $1,000 in Crime Stoppers reward money, and perhaps even $10,000 in reward money from Heim's family. Corporal then asked the officers whether they could get him out of jail. The officers indicated they would discuss Corporal's request. A few days later one of the officers talked to someone at the Hennepin County Attorney's Office and explained that Corporal had cooperated in a homicide investigation and that Corporal was afraid to be locked up with two men he had identified. Corporal's bail of $15,000 was vacated and he was released

from confinement. Corporal also asked the officers if they would assist in obtaining the dismissal of the charge of being a felon in possession of a firearm. The officers indicated that they would see what they could do. Shortly after his release from confinement, an officer gave Corporal $590 for relocation expenses.

On January 30, 1996, Corporal testified before the grand jury in a manner consistent with his statement to police. The following day, Corporal contacted an attorney. Corporal had not told the officers, or the grand jury, the entire story of his involvement in the case and was concerned that he might be charged with additional offenses related to Heim's murder. Corporal subsequently told officers that he had not told the whole truth about his involvement in Heim's death and received a guarantee that he would not be charged in connection with Heim's murder or in connection with any drug-related offense. On February 6, 1996, Corporal appeared a second time before the grand jury and testified that, on the day of the Heim murder, he had suggested that Lynch and Lewis purchase marijuana from Heim. Corporal testified that Lynch and Lewis picked him up and drove toward Heim's apartment when it was revealed that neither Lynch nor Lewis had enough cash to purchase the marijuana. Corporal further testified that Lynch suggested that they take the marijuana from Heim by force but, when they arrived at Heim's apartment, Lynch and Lewis approached Heim's door but did not go inside. Instead, Lynch and Lewis gave Corporal a ride to his home. Corporal then repeated his earlier testimony that later that evening while leaving his mother's home, which was across the street from Heim's apartment, he heard gunshots and witnessed Lynch and Lewis fleeing Heim's apartment. On February 23, 1996, after Lynch had been indicted, Corporal received $1,000 from Crime Stoppers.

On December 19, 1995, Lynch was arrested and held for 36 hours as a suspect in Heim's murder. At the end of the 36–hour period, Lynch was released without being charged. Shortly thereafter, Edwards contacted homicide officers and told them that he had been held for a parole violation in the same jail cell with a man named "Lucky," and that "Lucky" told Edwards that he and another man had planned to rob Heim but that the robbery had "gone bad." From a photo lineup, Edwards identified Lynch as "Lucky." Jail records confirmed that Edwards and Lynch shared a jail cell during Lynch's brief confinement.

After giving his statement to police but before testifying before the grand jury, Edwards was informed that he might be eligible for both Crime Stoppers reward money and the Heim family's reward money. Edwards then asked the officers whether they could get him out of jail. On two separate occasions the officers informed Edwards that they could not promise anything. A few days later an officer talked with Edwards' probation officer and Edwards was released from jail. Upon his release, Edwards was told that he would be placed in a new parole program. On February 23, 1996, after Lynch had been indicted, Edwards received $1,000 from Crime Stoppers.

In January of 1996, Ringstrom contacted homicide officers and told them that in December of 1995, he also had been confined in the same jail cell with Lynch and that Lynch asked him whether he could be charged with murder if police never found the gun. Ringstrom answered that he did not think it was possible, to which Lynch replied that they would never find the gun. After giving the statement, Ringstrom told the officer that he had been charged with driving after revocation of his driver's license and that he had to appear in court on the charge the day before he was scheduled to testify before the grand jury. In a letter to the city attorney, the officer requested that Ringstrom's cooperation in the murder case be considered in his pending case. Both the hearing and the charge against Ringstrom were continued.

On November 13, 1995, less than one month after Heim's murder, Lynch and Lewis were arrested for robbing a Burger King in south Minneapolis. Wearing dark clothes and ski masks and brandishing pistols, Lynch and Lewis held Burger King employees and customers at gunpoint and made off with an undisclosed amount of cash. On October 23,

1996, Lynch pleaded guilty to this aggravated robbery. Prior to the Heim murder trial, the state notified Lynch that it intended to introduce evidence of the aggravated robbery conviction in the Heim murder case for the purpose of showing identity and modus operandi. Over defense objection, the trial court admitted the evidence.

## I.

 A grand jury proceeding is not a trial on the merits and grand jurors do not determine guilt or innocence but determine whether there is probable cause to believe the accused has committed the crime. *See State v. Inthavong*, 402 N.W.2d 799, 801 (Minn.1987). A presumption of regularity attaches to the indictment and it is a rare case where an indictment will be invalidated. *See id.* Because of this presumption, a criminal defendant bears a heavy burden when seeking to overturn an indictment. *See State v. Scruggs*, 421 N.W.2d 707, 717 (Minn.1988). This burden is heightened when, as here, the defendant has been found guilty beyond a reasonable doubt following a fair trial. *See id.*

 A prosecutor's failure to disclose exculpatory evidence to the grand jury will require dismissal of the indictment if the evidence would have materially affected the grand jury proceeding. *See State v. Moore*, 438 N.W.2d 101, 105 (Minn.1989). The effect on the grand jury proceeding must be judged after looking at all of the evidence that the grand jury received. *See State v. Olkon*, 299 N.W.2d 89, 106 (Minn.1980), *cert. denied*, 449 U.S. 1132, 101 S.Ct. 954, 67 L.Ed.2d 119 (1981).

 In this case, the grand jury was not informed that Corporal received $590 in relocation expenses and that officers told Corporal and Edwards that reward money might be available through Crime Stoppers and the Heim family. The grand jury was not told that the officers had succeeded in obtaining Corporal's release from confinement and that Edwards had been released from confinement and that his parole had been restructured at the officer's request. Also, the grand jury was not informed that an officer had written a letter on Ringstrom's behalf to inform a city attorney that Ringstrom had cooperated with a homicide investigation and to request that his cooperation be considered with regard to a charge of driving after revocation of license.

When considered in light of what the grand jury did know about these three witnesses and the rest of the evidence presented, however, we conclude that these inducements would not have materially affected the grand jury proceedings. The grand jury knew that Corporal had not testified truthfully at his first appearance, that he had been involved to some extent in the events which led to Heim's murder, and that he had made a deal with prosecutors to ensure he would not be charged in connection with Heim's murder or with any drug-related offense. The grand jury also knew that an officer contacted Edwards' parole agent, and that Edwards' parole had been restructured to some extent. Even with this knowledge, the grand jury indicted Lynch. The testimony of all three witnesses, even though tainted to some degree by the failure to disclose all of the inducements, was more than sufficient to support a finding of probable cause. *See Moore*, 438 N.W.2d at 104–05 (holding that not all evidence bearing on the credibility of the state's witnesses materially affects the grand jury's decision to indict).

 We are further persuaded by the fact that after a trial on the merits and the opportunity to impeach these three witnesses with the inducements that were not disclosed to the grand jury, a petit jury convicted Lynch of the first-degree felony murder of Heim. The United States Supreme Court in *United States v. Mechanik*, adopted a federal rule that prevents a defendant from challenging an indictment once a petit jury returns a guilty verdict. 475 U.S. 66, 70, 106 S.Ct. 938, 89 L.Ed.2d 50 (1986) (holding that a petit jury's "subsequent guilty verdict means not only that there was probable cause to believe that the defendants were guilty as charged, but also that they are in fact guilty as charged beyond a reasonable doubt."). While we have declined to specifically adopt the holding in *Mechanik* as a per se rule, *see State v. Johnson*, 463 N.W.2d 527, 532 (Minn.

1990), we conclude that it is proper to factor the jury's guilty verdict into the analysis particularly when, as here, the defendant has a full opportunity to impeach the witnesses and discredit the state's case using the information that was not disclosed to the grand jury.[1] After carefully weighing the guilty verdict and the surrounding circumstances along with the evidence that was omitted from the grand jury proceedings but was fully disclosed to the petit jury, we conclude that the trial court did not err when it denied Lynch's motion to dismiss the indictment.

## II.

■ We now determine whether the trial court erred in admitting evidence of Lynch's involvement in the Burger King robbery. Absent a clear abuse of discretion, evidentiary rulings generally rest within the trial court's discretion. *See State v. Glaze*, 452 N.W.2d 655, 660 (Minn.1990). A defendant who claims the trial court erred in admitting evidence bears the burden of showing the error and any resulting prejudice. *See State v. Steinbuch*, 514 N.W.2d 793, 799 (Minn.1994).

■ As a general rule, evidence of other crimes or misconduct is not admissible to prove the defendant's character for the purpose of showing that the defendant acted in conformity with that character. *See* Minn. R. Evid. 404(b); *see also State v. DeWald*, 464 N.W.2d 500, 502–03 (Minn.1991). Such evidence, however, may be admitted for the limited purpose of showing "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b).

■ Other crimes evidence, often referred to in Minnesota as *Spreigl* evidence after this court's decision in *State v. Spreigl*, 272 Minn. 488, 139 N.W.2d 167 (1965), shall not be admitted in a criminal prosecution unless: (1) notice is given that the state intends to use the evidence; (2) the state clearly indicates what the evidence is being

offered to prove; (3) the evidence is clear and convincing that the defendant participated in the other offense; (4) the *Spreigl* evidence is relevant and material to the state's case; and (5) the probative value of the *Spreigl* evidence is not outweighed by its potential for unfair prejudice. *See State v. Bolte*, 530 N.W.2d 191, 196–97 (Minn.1995) (detailing procedural requirements and safeguards governing other-crime evidence); *see also State v. Landin*, 472 N.W.2d 854, 859 (Minn.1991); *DeWald*, 464 N.W.2d at 503. When it is unclear whether *Spreigl* evidence is admissible, the benefit of the doubt should be given to the defendant and the evidence should be excluded. *See State v. Johnson*, 568 N.W.2d 426, 433 (Minn.1997).

Lynch admits that the state gave him adequate notice that it intended to introduce evidence that he participated in the Burger King robbery for the purpose of proving identity and a common scheme or plan. The evidence is also clear and convincing that Lynch and Lewis knew each other and that they together participated in the armed robbery of the Burger King. In fact, Lynch pleaded guilty to the crime. We must therefore determine first whether the evidence is relevant and material to the state's case, and second whether the probative value of the evidence outweighs its prejudicial effect.

■ In determining the relevance and materiality of *Spreigl* evidence, "the trial court should consider the issues in the case, the reasons and need for the evidence, and whether there is a sufficiently close relationship between the charged offense and the *Spreigl* offense in time, place, or modus operandi." *State v. DeBaere*, 356 N.W.2d 301, 305 (Minn.1984); *see also State v. Wermerskirchen*, 497 N.W.2d 235, 240 (Minn.1993). The closer the relationship between the events, "the greater the relevance or probative value of the evidence and the lesser the likelihood that the evidence will be used for an improper purpose." *Bolte*, 530 N.W.2d at 198 (citation omitted). This court has "been

---

1. We emphasize, however, that trial courts must ensure that the grand jury is not manipulated by the state's failure to inform the grand jury of inducements made to state witnesses in return for their testimony. *See* ABA STANDARDS FOR CRIMI-

NAL JUSTICE 3–3.6(b) (3d ed.1993) (stating that "[n]o prosecutor should knowingly fail to disclose to the grand jury evidence which tends to negate guilt or mitigate the offense.").

flexible in applying this 'test' on appeal, upholding admission notwithstanding a lack of closeness in time or place if the relevance of the evidence was otherwise clear." *DeBaere,* 356 N.W.2d at 305 (citing*State v. Matteson,* 287 N.W.2d 408 (Minn.1979); *State v. Bolts,* 288 N.W.2d 718 (Minn.1980); *State v. Bellcourt,* 312 Minn. 263, 251 N.W.2d 631 (1977)).

■ Lynch argues that the evidence was not relevant because the two crimes, one a killing and the other a robbery, were not sufficiently similar. To support his position, Lynch argues that the type of pistol used in each crime was different, and that no shots were fired in the Burger King robbery. Lynch's arguments are not persuasive. As we have stated, *Spreigl* evidence need not be identical in every way to the charged crime, but must instead be sufficiently or substantially similar to the charged offense—determined by time, place or modus operandi. *See State v. Cogshell,* 538 N.W.2d 120, 123–24 (Minn.1995). In this case the two crimes occurred within one month of each other, within approximately one mile of each other, and in both crimes Lynch and the same accomplice wore dark clothes and ski masks, carried guns, and attempted a robbery. Evidence of the Burger King robbery "served to complete the picture of [Lynch], not to paint another picture." *State v. Berry,* 484 N.W.2d 14, 18 (Minn.1992). Therefore, the trial court did not abuse its discretion in concluding that there was a substantial similarity between the two incidents and that the evidence was relevant.

■ Even if evidence is relevant, however, it "may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice." Minn. R. Evid. 403. When balancing the probative value of *Spreigl* evidence against the potential for unfair prejudice, the trial court must consider how necessary the *Spreigl* evidence is to the state's case. *See Berry,* 484 N.W.2d at 17 (citing *Landin,* 472 N.W.2d at 860). When identity is at issue, evidence of other crimes is "admissible only if the trial court finds the direct or circumstantial evidence of defendant's identity is otherwise weak or inadequate, and that it is necessary to support the state's burden of proof." *State v. Bill-*strom, 276 Minn. 174, 178–79, 149 N.W.2d 281, 284 (1967). "It should be excluded where it is merely cumulative and a subterfuge for impugning defendant's character or for indicating to the jury that he is a proper candidate for punishment." *Billstrom,* 276 Minn. at 179, 149 N.W.2d at 284–85.

■ In this case, the state's need for the *Spreigl* evidence was obvious. None of the eyewitnesses were able to identify Heim's killers, both of whom wore ski masks, and only Corporal was able to place Lynch and Lewis near the crime scene. Evidence of the Burger King robbery indicates that Lynch and Lewis were connected to each other in terms of criminal activity. It indicates that Lynch and Lewis had committed a crime together wearing dark clothing, ski masks, and carrying guns, just as Heim's killers had. This evidence supported the state's theory that it was Lynch and Lewis who killed Heim. Absent this evidence, the state would have been left with bullet fragments, a fiber, a picture of a tire track, incriminating admissions of Lynch reported by cell mates, and several witnesses who saw two masked men and who heard the shots that killed Heim. *See State v. Slowinski,* 450 N.W.2d 107, 114 (Minn.1990) (upholding admission of *Spreigl* evidence in an unwitnessed sexual assault and murder case because, absent that evidence, the state would have been left with three fingerprints, a knife and a pair of gloves).

Further, the trial court gave cautionary instructions to the jury at the time that the evidence of the Burger King robbery was received and again at the end of the trial. The cautionary instructions, patterned after 10 Minn. Dist. Judges Ass'n, *Minnesota Practice,* CRIMJIG 2.01 and CRIMJIG 3.16 (3d ed.1990), assured that the jury did not give improper weight to the evidence. *See Slowinski,* 450 N.W.2d at 114–15. Therefore, we affirm Lynch's conviction.

Affirmed.