*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A14-1122**

State of Minnesota,
Respondent,

vs.

Tyrone Bill Harper,
Appellant.

**Filed July 20, 2015
Affirmed
Halbrooks, Judge**

Hennepin County District Court
File No. 27-CR-13-3634

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Michael O. Freeman, Hennepin County Attorney, Elizabeth R. Johnston, Assistant County Attorney, Minneapolis, Minnesota (for respondent)

Cathryn Middlebrook, Chief Appellate Public Defender, David W. Merchant, Assistant Public Defender, St. Paul, Minnesota (for appellant)

Considered and decided by Hooten, Presiding Judge; Halbrooks, Judge; and Reilly, Judge.

## UNPUBLISHED OPINION

**HALBROOKS**, Judge

Appellant challenges his conviction of aiding and abetting first-degree aggravated robbery, arguing that the district court abused its discretion by admitting evidence of

other crimes at trial and that the prosecutor's misconduct deprived him of a fair trial. We affirm.

**FACTS**

On February 1, 2013, Minneapolis police officers responded to a report of a robbery. A store clerk told the officers that two people wearing masks entered the store. One of them pointed a handgun at the clerk and demanded that he put the cash-register drawer on the counter. One of the masked individuals continued to point the gun at the clerk while the other emptied the cash out of the drawer. They also stole four packs of Newport cigarettes, Metro Transit bus passes, the clerk's personal money out of his wallet, and the clerk's cell phone. The clerk estimated that they stole between $200 and $300 from the cash register and $330 from the clerk's wallet, including three two-dollar bills. The incident was captured by surveillance video, which the police officers reviewed with the store clerk. One of the officers testified that the video showed that the person with the gun wore a "dark Carhartt-type jacket" and that both people wore black masks. The clerk described the two suspects as African-American men of medium build and said that the gunman had bright hazel eyes.

Using the clerk's cell-phone number, the police tracked the phone to a specific location in Minneapolis. Police officers proceeded to that location, observed two males who fit the suspects' descriptions, and identified them as appellant Tyrone Bill Harper and J.H. Harper was wearing a black Carhartt jacket. The officers conducted a pat search and a later search incident to arrest of Harper and discovered five packs of Newport cigarettes, Metro Transit bus passes, and $245 in cash, including two two-dollar

2

bills. The officers also conducted a pat search and a later search incident to arrest of J.H. and discovered the store clerk's cell phone, two black masks, Metro Transit bus passes, and $248 in cash, including one two-dollar bill. The state charged Harper with aiding and abetting first-degree aggravated robbery, in violation of Minn. Stat. §§ 609.05, subd. 1, .245, subd. 1 (2012).

The state provided notice that it intended to offer evidence of two *Spreigl* incidents that Harper had previously committed with J.H. The state indicated that it would offer the evidence to show identity, common scheme or plan, and to provide context for the charged offense. One of the *Spreigl* incidents occurred while Harper was a juvenile. The other occurred in 2010, when Harper was an adult, and involved a burglary. Harper moved the district court to preclude the state from introducing the evidence, arguing that it was not admissible because both of the *Spreigl* incidents were irrelevant and unduly prejudicial.

The district court excluded the juvenile incident but admitted evidence of the 2010 burglary. The district court stated that it would limit the evidence to the fact that Harper and J.H. had committed a previous offense together "and not necessarily that it was a burglary or any particular details of the offense." With that limitation, the district court found that the evidence was relevant and material and that the probative value was not outweighed by the potential for unfair prejudice. The parties stipulated that in 2010, Harper and J.H., "acting together, entered a business without permission . . . and stole property." After the state rested its case-in-chief, the district court provided a standard

3

cautionary instruction to the jury and then read the stipulation to the jury. The district court read the cautionary instruction to the jury again before deliberations began.

Harper testified at trial that he did not commit the robbery but that he met J.H. the evening of the robbery because J.H. owed him money. Harper stated that J.H. paid him by giving him five packs of Newport cigarettes, Metro Transit bus cards, and $45, including two two-dollar bills. Harper then testified that he and J.H. were walking to the bus stop when the police stopped them, searched them, and discovered the evidence linking Harper and J.H. to the robbery.

During the closing and rebuttal arguments, the prosecutor referred to Harper's history with J.H. multiple times. Harper's counsel moved for surrebuttal, arguing that the prosecutor committed misconduct by discussing how Harper had acted in conformity with his criminal character. The district court denied the motion for surrebuttal. The jury found Harper guilty of aiding and abetting aggravated robbery in the first degree. The district court subsequently sentenced Harper to 68 months in prison. Harper now appeals his conviction.

**DECISION**

**I.**

Evidence of other crimes, wrongs, or acts, also known as *Spreigl* evidence, "is not admissible to prove the character of a person in order to show action in conformity therewith," but it may "be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Minn. R. Evid. 404(b); *State v. Campbell*, 861 N.W.2d 95, 102 (Minn. 2015);

4

*State v. Spreigl*, 272 Minn. 488, 490-91, 139 N.W.2d 167, 169 (1965). We review a district court's decision to admit *Spreigl* evidence for an abuse of discretion. *State v. Ness*, 707 N.W.2d 676, 685 (Minn. 2006).

District courts follow a five-step process when determining the admissibility of *Spreigl* evidence:

> (1) the state must give notice of its intent to admit the evidence; (2) the state must clearly indicate what the evidence will be offered to prove; (3) there must be clear and convincing evidence that the defendant participated in the prior act; (4) the evidence must be relevant and material to the state's case; and (5) the probative value of the evidence must not be outweighed by its potential prejudice to the defendant.

*Id.* at 686.

Here, it is undisputed that the state satisfied the first three factors, but Harper argues that the state failed to meet the fourth and fifth factors because the evidence is irrelevant and any probative value is outweighed by the danger of unfair prejudice. The district court admitted the *Spreigl* evidence of Harper's 2010 burglary, stating:

> It is relevant and material to . . . the identification of joint actors. The probative value is not outweighed by the potential of unfair prejudice because of the fact that I would give a cautionary instruction at the time right before the evidence was admitted and as well in the final instruction. . . . I think the fact that they committed an offense together is the important relevant information. And so I'm going to limit the evidence to the fact that offenses were committed together and not necessarily that it was a burglary or any particular details of the offense.

**Relevance and Materiality**

In determining the relevance of *Spreigl* evidence, the district court should "focus on the closeness of the relationship between the other crimes and the charged crimes in terms of time, place and modus operandi." *State v. Wermerskirchen*, 497 N.W.2d 235, 240 (Minn. 1993) (citation omitted). "[T]he closer the relationship, the greater is the relevance or probative value of the evidence and the lesser is the likelihood that the evidence will be used for an improper purpose." *Id.*

Here, the district court found that the 2010 burglary, which Harper and J.H. had committed together, was relevant to prove "the identification of joint actors." The jury heard the *Spreigl* evidence through a stipulation that was agreed upon by the parties. The stipulation stated: "On August 17th, 2010, in the City of Minneapolis, Hennepin County, Tyrone Bill Harper and [J.H.] acted together, entered a business without permission, and while inside stole property that did not belong to them. You must not speculate as to the other circumstances of the offense."

Other crimes committed by a defendant with an accomplice may be relevant to prove involvement with the accomplice in the charged offense. *See State v. Clark*, 755 N.W.2d 241, 261 (Minn. 2008) (concluding that *Spreigl* evidence of a prior bank robbery was admissible in the appellant's aiding and abetting first-degree-murder trial "for the limited purposes of showing absence of mistake or identity as joint actors"); *State v. Nelson*, 632 N.W.2d 193, 204 (Minn. 2001) (concluding that *Spreigl* evidence of two prior armed robberies was relevant in the appellant's aiding and abetting first-degree-murder trial to show that the appellant and his accomplice "worked together closely to

6

coordinate their criminal activity"). Here, Harper argues that the evidence is not relevant because the 2010 burglary is dissimilar to the charged offense as to time and manner.

Harper argues that the burglary is too remote to be relevant because it occurred two and one-half years before the charged offense. But the Minnesota Supreme Court has declined "to adopt a bright-line rule for determining when a prior bad act [becomes] too remote" and has affirmed the admission of 19-year-old prior bad acts. *State v. Washington*, 693 N.W.2d 195, 201-03 (Minn. 2005). And this court has affirmed the admission of *Spreigl* evidence of an "aggravated robbery in which a handgun and an accomplice were involved" because "the crimes were separated by only two and one-half years and the modus operandi was similar." *State v. Rodriguez Torres*, 400 N.W.2d 802, 804 (Minn. App. 1987), *review denied* (Minn. Mar. 25, 1987). Therefore, the fact that the *Spreigl* incident occurred two and one-half years prior to the charged offense does not necessitate a finding that it is too remote to be relevant.

Harper also argues that the 2010 burglary is irrelevant because it is factually distinguishable from the charged offense. Harper argues that the *Spreigl* incident is dissimilar to the charged offense because it occurred in the middle of the night when the business was closed, involved a theft of a television, and did not involve a weapon. The state argues that the similarities between the prior act and the charged offense outweigh the dissimilarities. The similarities include that Harper and J.H.: identified a business in Minneapolis; acted at night; acted together; and stole property. Because "[a]bsolute similarity between the charged offense and the *Spreigl* incident is not required to establish relevancy," *State v. Berry*, 484 N.W.2d 14, 17 (Minn. 1992), we conclude that

7

the district court did not abuse its discretion by finding that the *Spreigl* evidence was relevant and material to the state's case.

**Probative Value Versus Potential Prejudice**

In determining whether the evidence's probative value outweighs its potential for unfair prejudice, we balance the evidence's relevance and "the [s]tate's need to strengthen weak or inadequate proof" against the risk of use as propensity evidence. *State v. Fardan*, 773 N.W.2d 303, 319 (Minn. 2009). "When identity is at issue, evidence of other crimes is admissible only if the [district] court finds the direct or circumstantial evidence of defendant's identity is otherwise weak or inadequate, and that it is necessary to support the state's burden of proof." *State v. Lynch*, 590 N.W.2d 75, 81 (Minn. 1999). "It should be excluded where it is merely cumulative and a subterfuge for impugning defendant's character or for indicating to the jury that he is a proper candidate for punishment." *Id.* (quotation omitted). The district court should make "[t]he final determination of the strength of the state's case . . . after the state has presented all of its non-*Spreigl* evidence." *State v. Kennedy*, 585 N.W.2d 385, 392 (Minn. 1998).

Here, the district court did not engage in an analysis of "the state's need" and simply determined before trial that the evidence would not be unduly prejudicial because the jury would receive a cautionary instruction. The better practice would have been for the district court to reserve its ruling on the probative value of the *Spreigl* evidence until the rest of the state's case-in-chief was presented. *See id.* But Harper's defense theory was that he innocently connected with J.H. after J.H. committed the robbery, which made identity of joint actors a central issue at trial. To rebut Harper's defense theory and to

prove the elements of the crime beyond a reasonable doubt, the state needed to demonstrate that Harper and J.H. acted jointly. Therefore, the *Spreigl* evidence of the 2010 burglary was necessary for the state to prove identity—that is, to prove that Harper was the masked gunman.

District courts reduce the risk of prejudice to a defendant by limiting the number of *Spreigl* incidents and the kind of facts included in the *Spreigl* evidence. *Washington*, 693 N.W.2d at 203 (ruling that the district court "properly guarded against admitting evidence that was unnecessary" and unfairly prejudicial by "limiting the number of *Spreigl* incidents" and by limiting the testimony to only relevant facts). Here, the district court appropriately considered and then limited the number of *Spreigl* incidents by not admitting evidence of Harper's juvenile *Spreigl* incident and restricting the facts admitted regarding the 2010 burglary, stating, "I'm going to limit the evidence to the fact that offenses were committed together and not necessarily that it was a burglary or any particular details of the offense." Appellant argues that the district court abused its discretion by allowing the parties' stipulation to include some of the particular details of the burglary. But the parties agreed on which facts to include in the stipulation, and nothing in the record indicates that Harper's counsel could not have sought a more "sanitized" version of the evidence prior to trial. The fact that the district court did not reject the parties' agreed-upon stipulation does not amount to an abuse of discretion because the district court carefully analyzed the *Spreigl*-evidence issue and instructed the parties to limit the facts so as to limit the prejudicial effect.

In addition, cautionary instructions lessen "the probability of undue weight being given by the jury to the evidence." *Kennedy*, 585 N.W.2d at 392. Therefore, the district court reduced the potential for prejudice by reading cautionary instructions regarding the proper use of the evidence to the jury once before it read the stipulation and once again before the jury started deliberating. We conclude that the district court did not abuse its discretion by admitting the *Spreigl* evidence.

## II.

Appellant objected to the prosecutor's closing arguments on the ground that they encouraged the jury to conclude that appellant acted in conformity with his 2010 bad act and moved the district court for surrebuttal. The district court denied the motion. We review objected-to claims of prosecutorial misconduct under the two-tier harmless-error test. *State v. Yang*, 774 N.W.2d 539, 559 (Minn. 2009). We "first address whether there was misconduct, and if so, whether it entitles [Harper] to a new trial." *State v. Wren*, 738 N.W.2d 378, 390 (Minn. 2007). A prosecutor commits misconduct "by means of insinuations and innuendoes which plant in the minds of the jury a prejudicial belief in the existence of evidence which is otherwise inadmissible." *State ex rel. Black v. Tahash*, 280 Minn. 155, 157, 158 N.W.2d 504, 506 (1968). "There is nothing inappropriate, of course, about referring to properly admitted *Spreigl* evidence in a closing argument. But such evidence may not be used as a means to attack the defendant's character or to establish a criminal propensity." *State v. Duncan*, 608 N.W.2d 551, 555 (Minn. App. 2000), *review denied* (Minn. May 16, 2000).

Here, in relevant part, the prosecutor stated in closing argument:

> This Defendant and [J.H.] planned on going into that convenience store, robbing it, and splitting the proceeds. It is as simple as that. These two guys have known each other for 11 years. Back in 2010 they had no problem with getting together, going into a business and stealing something. But this time around Mr. Harper wants you to believe that he didn't do it.

And on rebuttal, the prosecutor stated:

> [T]his is about identity. . . .
>
> . . . [Harper] cannot escape the fact that he has a history with [J.H.] . . . . [I]t's almost like they knew each other for a long time and that they knew how to do this thing and they discussed it beforehand like two people who have known each other for 11 years and who are already willing, able and have engaged in stealing before. . . .
>
> . . . You cannot ignore the history. You cannot ignore the hazel eyes.
>
> The other thing that you can't ignore is the black Carhartt jacket. Another fact that just stacks upon everything else.

Harper's counsel objected by asking for surrebuttal, arguing that the prosecutor's statements in both closing argument and on rebuttal that "they did it then, they did it now" were misconduct because the prosecutor used the *Spreigl* evidence "to prove the character of the Defendant or that the Defendant acted in conformity with such character." The district court denied the motion.

Identity was the central issue at trial, and the district court admitted the *Spreigl* evidence to prove the identity of joint actors. Harper argues that the prosecutor did not confine the use of the *Spreigl* evidence to show identity or the accomplice relationship but instead "framed his entire closing argument around the assertion that Harper's claim

11

of innocence was not believable because he and [J.H.] had stolen from a business before." But our review of the prosecutor's closing arguments as a whole indicates that the prosecutor walked through each element of aggravated robbery—(1) theft, (2) with threat of force, (3) with a dangerous weapon, (4) in Hennepin County on February 1, 2013—and then the prosecutor explained, "I am not going to harp on these elements because you heard all the testimony from the witnesses, and in fact by now you gather what is going to be the real issue in this case, is how do you know that it is this Defendant, Mr. Harper." The prosecutor then explained that because the robbers were wearing masks, the identity of Harper "is proved by circumstantial evidence." Therefore, the prosecutor's closing argument as a whole focused on the issue of identity and all of the circumstantial evidence that proved that Harper was the masked gunman.

Throughout his closing argument, the prosecutor laid out the circumstantial evidence of identity: the gunman's hazel eyes; the Carhartt jacket; the two black masks; the store clerk's cell phone; the Metro Transit bus passes; the five packs of Newport cigarettes; Harper and J.H. each had roughly $250 on them, including three two-dollar bills; Harper and J.H. had a history, including their "willing[ness] to engage in crimes together"; and Harper and J.H. were together when they were apprehended. The prosecutor did not commit misconduct by relying on Harper's criminal history with J.H. as one piece of circumstantial evidence to argue that all of the evidence combined proved that Harper aided and abetted the charged offense. We conclude that the district court acted within its discretion by denying appellant's motion for surrebuttal.

**Affirmed.**

12