Kirk SANDERSON, petitioner,
Appellant,

v.

STATE of Minnesota, Respondent.

No. CX–99–214.

Court of Appeals of Minnesota.

Oct. 19, 1999.

County Attorney, Minneapolis, MN (for appellant)

Earl P. Gray, St. Paul, MN (for respondent)

Considered and decided by TOUSSAINT, Chief Judge, LANSING, Judge, and KLAPHAKE, Judge.

## OPINION

TOUSSAINT, Chief Judge.

This appeal is from an order denying postconviction relief. Appellant Kirk Sanderson challenges his conviction for criminal sexual conduct in the third degree, arguing that (1) the trial court erred in admitting Spreigl evidence and refusing the jury instructions Sanderson requested; and (2) he is entitled to a new trial because of prosecutorial misconduct and ineffective assistance of counsel. Because: (1) the trial court did not err in admitting "other wrongs or acts" evidence or refusing to give the jury instructions Sanderson requested; (2) the prosecution did not engage in misconduct; and (3) Sanderson was not denied effective assistance of counsel, we affirm.

## FACTS

On November 2, 1996, 18–year–old E.R. had a co-ed sleepover gathering at her home after a high school dance. Seventeen-year old C.B. testified that she attended the sleepover and was sleeping on a couch under an unzipped sleeping bag. C.B. agreed that Sanderson, who attended the same high school, could share the couch with her. C.B. testified that she awoke repeatedly to feel Sanderson touching her ankle, leg, and thigh and she told him six to seven times to stop. Thereafter, C.B. awakened to find that Sanderson had placed his fingers in her vagina. C.B. woke E.R. to tell her that Sanderson had fondled her, which was corroborated by E.R.'s testimony. C.B. then drove home and told her mother that Sanderson had placed his fingers in her vagina. Later

Mike Hatch, Attorney General, St. Paul, MN and Amy Klobuchar, Hennepin County Attorney, Linda K. Jenny, Assistant

that morning, C.B. and her mother went to Sanderson's home, and Sanderson told C.B.'s mother that he had done "this" to C.B.

The evidence introduced at trial consisted of testimony from C.B., C.B.'s mother, E.R., and Sanderson. In addition, A.G., another high-school student, testified that Sanderson had placed his fingers in her vagina while she was asleep at a similar co-ed gathering in June 1996, and she had immediately reported the incident to her hostess, who corroborated the testimony of A.G. The testimony of A.G. was admitted over the defense objections. The trial court excluded evidence of two other Spreigl incidents.

Following a seven-day jury trial, Sanderson was convicted of third-degree sexual conduct. Sanderson appeals from the denial of his petition for postconviction relief.

### ISSUES

1. Did the trial court abuse its discretion in admitting Spreigl evidence?

2. Was the trial court's Spreigl instruction proper?

3. Did the prosecutor engage in misconduct during closing arguments?

4. Was Sanderson denied effective assistance of trial counsel?

### ANALYSIS

#### I.

On appeal, this court reviews a postconviction proceeding only to determine if there is sufficient evidence to affirm the postconviction court's findings. *State v. Rainer*, 502 N.W.2d 784, 787 (Minn.1993). Those findings will not be disturbed absent an abuse of discretion. *Id.* Sanderson argues that evidence of a sexual assault against A.G. was wrongfully admitted because the potential for unfair prejudice substantially outweighed its probative value, the evidence was improper proof of character, and it involved a confidential juvenile matter.

Evidence of other crimes or bad acts is inadmissible to prove that the individual acted in conformity therewith in committing the charged offense. Minn. R. Evid. 404(a); *State v. Berry*, 484 N.W.2d 14, 17 (Minn.1992). But, Spreigl evidence is admissible to establish motive, intent, common scheme, or plan. Minn. R. Evid. 404(b); *State v. DeWald*, 464 N.W.2d 500, 502–03 (Minn.1991). An appellate court will not reverse the trial court's rulings admitting Spreigl evidence absent an abuse of discretion. *State v. Slowinski*, 450 N.W.2d 107, 113 (Minn.1990).

In order for Spreigl evidence to be admissible, it must be shown that the: (1) evidence is clear and convincing that the defendant participated in the Spreigl incident; (2) Spreigl evidence is material and relevant to the case; and (3) potential for unfair prejudice does not outweigh the probative value of the Spreigl evidence. Minn. R. Evid. 403, 404(b); *State v. Shannon*, 583 N.W.2d 579, 583 (Minn.1998).

Sanderson contends that the encounter with A.G. was consensual, but he does not argue on appeal that the trial court erred in finding that the evidence of his involvement in that incident was clear and convincing. Sanderson contends that the Spreigl evidence is irrelevant and unfairly prejudicial. The evidence was offered by the state to show Sanderson's modus operandi and intent, and as rebuttal to the defense theory of fabrication or consent by C.B. A high degree of similarity between the Spreigl incident and the crime charged assists the jury in determining the intent of the defendant. *Patten v. State*, 378 N.W.2d 648, 651 (Minn.App. 1985), *review denied* (Minn. Dec. 17, 1985).

When Spreigl evidence is similar to the crime charged, the evidence is relevant to show a common scheme or plan, or modus operandi. *State v. Blair*, 474 N.W.2d 630, 636 (Minn.App.1991), *review denied* (Minn. Oct. 11, 1991). Evidence is relevant when it shows a pattern of behav-

ior similar to the offense charged. *State v. Wermerskirchen,* 497 N.W.2d 235, 242 (Minn.1993). Sanderson's behavior with A.G. reveals a pattern of sexual conduct and that incident was close in time to the offense charged.

Only one of the three Spreigl incidents offered by the state was admitted and a cautionary jury instruction was given both at the time the evidence was introduced and at the conclusion of the trial. Under the circumstances, the postconviction court did not err in concluding that the probative value of the Spreigl evidence outweighed its prejudicial effect. There was no abuse of discretion.

## II.

Sanderson contends that the Spreigl cautionary jury instructions given by the trial court, CRIMJIG 3.16 and 2.01 are both "inadequate and unfair." Trial courts are given "considerable latitude" in selecting the language of jury instructions. *State v. Gray,* 456 N.W.2d 251, 258 (Minn. 1990) (quoting *Alholm v. Wilt,* 394 N.W.2d 488, 490 (Minn.1986)). Additionally, "refusal to give a requested jury instruction lies within the discretion of the trial court" and will not be reversed absent a demonstrated abuse of that discretion. *State v. Blasus,* 445 N.W.2d 535, 542 (Minn.1989).

Sanderson requested a jury instruction based on the model jury instructions adopted in the Eighth Circuit. The proposed instruction specified that Spreigl evidence was to be used only for the purpose of determining intent or modus operandi. The trial court denied the request and instructed the jury as follows:

> In this case, the State has introduced evidence of an occurrence taking place allegedly in June of 1996. As I told you at the time that this evidence was offered, it was admitted for the limited purpose of assisting you in determining whether Defendant committed the crime with which he is charged in the complaint that I will read to you shortly and read at the beginning of the trial. De-

> fendant is not being tried for and may not be convicted of any crime other than the crime charged in the complaint. You are instructed specifically that you are not to convict the Defendant on the basis of any occurrence taking place in June of 1996.

CRIMJIGs 2.01 and 3.16 are appropriate cautionary instructions on the use of Spreigl evidence. *See State v. Lynch,* 590 N.W.2d 75, 81 (Minn.1999) (holding these instructions allow the jury to give proper weight to Spreigl evidence); *see also State v. Frisinger,* 484 N.W.2d 27, 30 (Minn. 1992) (holding they are "recommended instruction[s]" to be given concerning evidence of other bad acts). The trial court did not abuse its discretion in instructing the jury in accordance with CRIMJIGs 2.01 and 3.16.

## III.

Sanderson claims he was denied a fair trial because the prosecutor engaged in misconduct during closing arguments. More specifically, Sanderson argues that the prosecutor committed misconduct by (1) vouching for witness credibility; and (2) requesting that jurors put themselves in the victim's place.

Defense counsel has a duty to object immediately to improper statements during closing arguments and to request curative instructions. *State v. Brown,* 348 N.W.2d 743, 747 (Minn.1984). Failure to object or seek cautionary instructions constitutes waiver of the defendant's right to raise the issue on appeal. *State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984). When defense counsel fails to object to the prosecutor's statements, the appellate court may infer that defense counsel did not deem the argument to be improper. *State v. Daniels,* 332 N.W.2d 172, 180 (Minn.1983). In this case, defense counsel did not object to the prosecutor's comments during the final argument.

■ But, if the prosecutor's comments were unduly prejudicial, the conviction may be reversed even if the defendant did not object to the comments at trial. *State v. Thaggard*, 527 N.W.2d 804, 812–13 (Minn.1995). The issue is whether any inappropriate comments played a substantial role in convincing the jury to convict the defendant. *State v. Parker*, 417 N.W.2d 643, 647 (Minn.1988).

■ An appellate court must decide whether the challenged conduct was: (1) in error; and (2) so prejudicial that it constituted a denial of the defendant's right to a fair trial. *State v. Bright*, 471 N.W.2d 708, 712–13 (Minn.App.1991), *review denied* (Minn. Aug. 1, 1991). If the misconduct is "unusually serious," it must be harmless beyond a reasonable doubt, to avoid reversal. *State v. Caron*, 300 Minn. 123, 127, 218 N.W.2d 197, 200 (1974). When the misconduct is deemed less serious, an appellate court must look to whether it had a "substantial" influence upon the jury's decision to convict the defendant. *Id.* at 128, 218 N.W.2d at 200

■ The record reflects that the prosecutor stated (a) E.R. was "so impressed" by the "sincerity" of C.B.'s account of the incident that she sent C.B. home and asked Sanderson to leave; (b) C.B.'s mother was "so impressed" by C.B.'s information that she decided to confront Sanderson at his home; and (c) Sanderson's mother was "so impressed" by what she heard from C.B.'s mother that she did not "interrogate further."

Sanderson cites *Van Buren v. State* to support his contention that improper vouching occurred. However, in *Van Buren*, the prosecutor had "intentionally elicited vouching testimony during trial." *Van Buren v. State*, 556 N.W.2d 548, 551 (Minn.1996). The witnesses also testified regarding the beliefs of others, depriving defense counsel of an opportunity to cross-examine the persons whose beliefs were at issue. *Id.* at 552. In this case, defense counsel did have an opportunity to cross-examine E.R. and C.B.'s mother, and to elicit testimony from Sanderson's mother. In fact, defense counsel asked C.B.'s mother whether she believed her daughter.

■ A prosecutor may argue the credibility of witnesses. *State v. Everett*, 472 N.W.2d 864, 870 (Minn.1991). However, the prosecutor may not emphasize the opinion of a witness concerning the sincerity of the victim. *Maurer v. Dept. of Corrections*, 32 F.3d 1286, 1290 (8th Cir.1994). In this case, the prosecutor was accurately summarizing the testimony of witnesses who were subject to examination by the defendant. The postconviction court determined that if there was any vouching, it was "isolated in the context of the entire argument." There were 33 lines of alleged vouching in the prosecutor's closing argument, which totaled approximately 875 lines. Under the circumstances, the postconviction court did not abuse its discretion in concluding that the comments did not rise to the level of misconduct.

■ Sanderson also challenges the prosecutor's statements encouraging jurors "to revert back to the time when [they] were seventeen years old" and to imagine how they would feel if they were being bothered every so often while trying to sleep. Sanderson contends that in *Thaggard*, it was held "improper" to tell the jurors to put themselves in the victim's place. *Thaggard*, 527 N.W.2d at 812. Nonetheless, the defendant in *Thaggard* was not entitled to a new trial due to such comments. *Id.*

The prosecutor's comments did not ask the jury to place "themselves in the shoes of the victim" and "decide the case on the basis of passion rather than reason." *State v. Johnson*, 324 N.W.2d 199, 202 (Minn.1982); *see also Thaggard*, 527 N.W.2d at 812. The prosecutor urged the jury to infer that C.B. remained in the room because she was tired, rather than because she consented to Sanderson's advances. The record establishes that the comments were made to aid the jury in

understanding the reasonableness of C.B.'s conduct, not to decide the case based on the feelings they might attribute to her.

The trial court properly instructed the jury that the statements of counsel were not evidence and that the verdict must be based on testimony and exhibits introduced into evidence. The instruction of the trial court mitigated any prejudicial effect of the prosecutor's remarks.

## IV.

■ Sanderson contends he received ineffective assistance of counsel. The postconviction court denied Sanderson's request for an evidentiary hearing. Sanderson contends that defense counsel was ineffective because (1) counsel failed to object to the prosecutor's comments during closing argument or to ask for a cautionary instruction or a mistrial; (2) counsel did not give an opening statement; and (3) counsel did not move to sequester witnesses.

■ The standard used in determining whether to grant a new trial based on a claim of ineffective assistance of counsel is the following:

> The defendant must show that the representation "fell below an objective standard of reasonableness" and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."

*Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland v. Washington*, 466 U.S. 668, 688, 694, 104 S.Ct. 2052, 2064, 2068, 80 L.Ed.2d 674 (1984)).

■ A postconviction evidentiary hearing is required if the petition alleges facts that would entitle the petitioner to relief upon determination that the facts are true. *Fratzke v. State*, 450 N.W.2d 101, 102 (Minn.1990). The determination of a postconviction court is reviewed under an abuse of discretion standard. *Scruggs*

*v. State*, 484 N.W.2d 21, 25 (Minn.1992). Furthermore, the findings of the postconviction court will be affirmed if there is sufficient evidence to support them. *Id.*

■ Defense counsel's actions did not fall below an objective standard of reasonableness. Strategic decisions should be left to the discretion of counsel, thus allowing for "flexibility" when representing a client. *King v. State*, 562 N.W.2d 791, 795 (Minn.1997). The choice by counsel of making opening or closing arguments should not be second-guessed. *See State v. Brown*, 376 N.W.2d 451, 455 (Minn.App.1985) ("Counsel's choice of strategy in closing argument should not be 'second-guessed.'"); *see also State v. Race*, 383 N.W.2d 656, 663 (Minn.1986) (appellant not denied effective assistance of counsel merely because counsel waives an opening statement). In addition, the jury was told that defense counsel "can either make an opening statement * * * or he can wait until later on in the trial or he need make no opening statement at all." Furthermore, as the postconviction court noted, counsel's failure to make proper objections is not a sufficient basis to find ineffectiveness of counsel. *State v. Prettyman*, 293 Minn. 493, 198 N.W.2d 156, 158 (1972); *see also Lande v. State*, 406 N.W.2d 574 (Minn.App.1987) (counsel's decision whether or not to object to introduction of a transcript constituted trial tactic).

■ However, even assuming counsel's actions fell below an objective standard of reasonableness, Sanderson has failed to show that the verdict would have been different. In order to prove that the outcome would have been different absent the errors, appellant must do more than merely make "bald assertions and conclusory allegations." *Berg v. State*, 403 N.W.2d 316, 318 (Minn.App.1987), *review denied* (Minn. May 18, 1987). Sanderson makes no showing of a reasonable probability that the verdict would have been different with a defense opening statement and appropriate objections to the prosecutor's closing

argument. The postconviction court did not abuse its discretion in denying Sanderson an evidentiary hearing.

## D E C I S I O N

The trial court did not err in denying Sanderson's postconviction petition.

**Affirmed.**

KLAPHAKE, Judge (dissenting)

I respectfully dissent. Because I believe the trial court committed prejudicial error when it rejected Sanderson's proposed jury instruction, the postconviction court further erred in failing to grant Sanderson a new trial.

The cautionary instruction requested by Sanderson was intended to emphasize the limited purposes for which the *Spreigl* evidence in his case was admitted—modus operandi and intent. A party is entitled to an instruction limiting the use of evidence that has been allowed only for a specific purpose. *See* Minn. R. Evid. 105 (providing for instruction on limited admissibility on request). In cases involving *Spreigl* evidence, it is particularly important to caution the jury against using that evidence impermissibly as evidence of a defendant's bad character or propensity to commit a crime. Although the trial court here gave CRIMJIG 2.01 and 3.16, which are the current standard cautionary instructions for *Spreigl* evidence, I believe these instructions are inadequate. *See* 10 *Minnesota Practice* CRIMJIG 2.01, 3.16 (1990).

In two prior cases, this court has commented on CRIMJIG 2.01 and 3.16, but in both cases the defendant failed to preserve the issue for appeal or the trial court added extraneous language to these standard instructions. *See, e.g., State v. Elvin,* 481 N.W.2d 571, 575 (Minn.App.1992) (noting there was no defense objection but finding standard instructions proper), *review denied* (Minn. Apr. 29, 1992); *State v. Haala,* 415 N.W.2d 69, 76–77 (Minn.App. 1987) (noting lack of objection, finding standard instructions, even with extraneous language, not plain error), *review denied* (Minn. Dec. 22, 1987). In the two supreme court cases cited by the majority, CRIMJIG 2.01 and 3.16 were either not given by the trial court or were not challenged on appeal. *See, e.g., State v. Lynch,* 590 N.W.2d 75, 80–81 (Minn.1999) (not challenged on appeal); *State v. Frisinger,* 484 N.W.2d 27, 30 (Minn.1992) (not given in trial court). Thus, this is the first time we are squarely presented with the inadequacy of these instructions.

The instruction requested by Sanderson follows the Eighth Circuit's standard cautionary instruction for other-crimes evidence. *See* 1 Devitt, Blackmar, Wolff & O'Malley, *Federal Jury Instructions* § 17.08, at 665 (4th ed.1992). This instruction war ₃ the jury that evidence of a prior similar offense is not evidence that the defendant "committed such an act in this case." *Id.* This instruction also requires the court to specify the issues on which the jury may properly consider the other-crime evidence. *Id.* Similar standard instructions in other federal circuits accomplish the same two ends. *See id.* at 652–668 (quoting pattern instructions from 5th, 7th and 9th Circuits). Minnesota's standard cautionary instructions do neither.

The danger involved in admitting *Spreigl* or other-crime evidence is that the jury may use it for the "forbidden purpose of inferring propensity from character." *Frisinger,* 484 N.W.2d at 32 (footnote omitted). The rules of evidence forbid the admission of such evidence "to prove the character of a person in order to show action in conformity therewith." Minn. R. Evid. 404(b). CRIMJIG 2.01 and 3.16, however, contain no hint of any such prohibition. They merely inform the jury that the *Spreigl* evidence is admitted for a "limited purpose," but fail to identify that purpose. CRIMJIG 2.01, 3.16. By stating that the evidence has been admitted for use "in determining whether defendant committed the [charged] crime(s)," the standard instruction invites the jury to

misuse the evidence. CRIMJIG 3.16. Although CRIMJIG 3.16 warns against convicting "solely" based on the *Spreigl* evidence, that is only a small part of the danger recognized in rule 404. As the Sixth Circuit Court of Appeals has stated,

[t]o apply Rule 404(b) fairly, the district court must carefully identify, in its instructions to the jury, the specific factor named in the rule that is relied upon to justify admission of the other acts evidence, explain why that factor is material, and warn the jurors against using the evidence to draw the inferences expressly forbidden in the first sentence of Rule 404(b).

*United States v. Johnson*, 27 F.3d 1186, 1194 (6th Cir.1994).

Minnesota's cautionary *Spreigl* instructions have, over time, lost this sense of clarity. In the seminal case on *Spreigl* procedures, trial courts were required to "admonish the jury that the testimony is received for the limited purpose of establishing identity." *State v. Billstrom*, 276 Minn. 174, 179, 149 N.W.2d 281, 285 (1967) (footnote omitted). This plain-language limitation to a specific purpose has since been diluted into a vague and wordy standard form instruction that is blindly followed and that does not protect defendants from the dangers of the use of character evidence expressly recognized in rule 404(b).

I therefore would reverse the decision of the postconviction court and grant Sanderson a new trial.