STATE of Minnesota, Respondent,

v.

Paul Tracy DeYOUNG, Appellant.

No. C6–02–2280.

Court of Appeals of Minnesota.

Dec. 9, 2003.

Mike Hatch, Attorney General, St. Paul; Amy Klobuchar, Hennepin County Attorney, Thomas A. Weist, Assistant County Attorney, Minneapolis, for respondent.

John M. Stuart, State Public Defender, Marie L. Wolf, Assistant Public Defender, Minneapolis, for appellant.

Considered and decided by KLAPHAKE, Presiding Judge, STONEBURNER, Judge, and MINGE, Judge.

## OPINION

KLAPHAKE, Judge.

In this appeal from a conviction for first-degree criminal damage to property, appellant argues: (1) the district court abused its discretion by denying his motion to modify the standard *Spreigl* jury instruction to specify that evidence of two prior incidents in which he damaged property was admitted only to prove identity and motive; and (2) when the victim testified that she had paid exactly $500 for replacement parts to repair the damaged property and performed the labor herself, there was insufficient evidence to prove that the cost of repair and replacement exceeded $500, and, therefore, the conviction must be reduced to a gross misdemeanor. Because the district court erred by denying appellant's motion to modify

the standard *Spreigl* instruction but the error was harmless, and the evidence was sufficient to prove that the cost of repair and replacement exceeded $500, we affirm the conviction.

## FACTS

On September 30, 2001, at 7:00 p.m., appellant Paul Tracy DeYoung began to place telephone calls to the victim threatening to damage her vehicles. The calls continued for approximately two hours. About ten minutes after the last call, the victim heard "the smash of the windshields and the pop of the tires." She looked out her window and saw appellant step away from her two vehicles and leave in a white vehicle. The victim was positive that the man she saw was appellant. The victim had known appellant for 28 years, and the victim's boyfriend is appellant's brother.

The victim's 1987 Escort sustained a smashed windshield and two flat tires, and her 1991 Corsica sustained a broken windshield and four punctured tires. The victim testified that she spent $500 to repair both vehicles. She obtained some used parts from junkyards and other parts from friends and relatives at no cost and performed the repair work herself.

The district court admitted *Spreigl* evidence about a 1999 incident in which appellant smashed the front and back windshields of another vehicle belonging to this same victim. The court also admitted evidence about other criminal damage to property committed by appellant in 2000. The district court denied appellant's request to specifically instruct the jury that the *Spreigl* evidence could only be used to prove motive and identity.

A jury found appellant guilty of first-degree criminal damage to property under Minn.Stat. § 609.595, subd. 1(3) (2000). The district court sentenced appellant to a stayed term of 19 months in prison.

## ISSUES

1. Did the district court err in denying appellant's request to instruct the jury that the *Spreigl* evidence could only be admitted to prove identity and motive?

2. Is the evidence sufficient to prove that the cost of repairs to the victim's vehicles exceeded $500?

## ANALYSIS

*1. Jury Instructions*

■ The refusal to give a requested jury instruction lies within the discretion of the district court and will not be reversed absent an abuse of discretion. *State v. Cole*, 542 N.W.2d 43, 50 (Minn. 1996). "Trial courts are allowed 'considerable latitude' in [the] selection of language" for the jury instructions. *State v. Gray*, 456 N.W.2d 251, 258 (Minn.1990) (quoting *Alholm v. Wilt*, 394 N.W.2d 488, 490 (Minn.1986)). "[J]ury instructions must be viewed in their entirety to determine whether they fairly and adequately explained the law of the case." *State v. Flores*, 418 N.W.2d 150, 155 (Minn.1988).

■ The district court here instructed the jury as follows:

The State introduced evidence of occurrences on October 22, 1999, in Columbia Heights and August 14, 2000, in Minneapolis. This evidence was received for the limited purpose of assisting you in determining whether [appellant] committed those acts with which [he] is charged in the complaint.

[Appellant] is not being tried for and may not be convicted of any offense other than the charged offense. You are not to convict [appellant] on the basis of any occurrences on October 22, 1999, and August 14, 2000, in Minne-

apolis. To do so might result in unjust double punishment.

Appellant argues that the district court erred in denying his request to specifically instruct the jury that the *Spreigl* evidence could only be admitted to prove motive and identity. The district court's instructions, however, were in accord with the recommended instructions found in the jury instruction guides, 10 *Minnesota Practice,* CRIMJIG 2.01, 3.16 (1999).

In *Sanderson v. State,* 601 N.W.2d 219, 224 (Minn.App.1999), *review granted* (Minn. Jan. 18, 2000), *and review denied* (Minn. Mar. 28, 2000), the district court denied the defendant's request for an instruction "that *Spreigl* evidence was to be used only for the purpose of determining intent or modus operandi." The district court instructed the jury in accordance with the CRIMJIG's and this court affirmed, stating only that "CRIMJIGs 2.01 and 3.16 are appropriate cautionary instructions on the use of *Spreigl* evidence." *Id.* This court did not discuss or analyze the rationale behind the CRIMJIGs further.

In *State v. Broulik,* 606 N.W.2d 64, 71 (Minn.2000), the supreme court held that the district court did not abuse its discretion by failing to give an instruction limiting the specific purpose for which *Spreigl* evidence may be considered, where the defendant did not request such an instruction. The *Broulik* court emphasized the importance of a defendant requesting a limiting instruction, repeatedly stating that federal cases require such an instruction only "upon request," "if requested," or "when requested." *Id.* at 69–70. The *Broulik* court further stated that "[s]ignificantly," the defendant in *Broulik* did not request a limiting instruction. *Id.* at 68–69.

The *Broulik* court nevertheless found the lack of such a limiting instruction trou-blesome and discussed the issue in great detail:

The United States Supreme Court has recognized that Federal Rule of Evidence 105, which is identical to the parallel Minnesota Rule 105, provides protection against unfair prejudice from other crimes evidence admitted under Rule 404(b). Both the federal and state Rule 105 provide that "[w]hen evidence which is admissible ... for one purpose but not admissible ... for another purpose is admitted, the court, *upon request,* shall restrict the evidence to its proper scope and instruct the jury accordingly." Fed.R.Evid. 105; Minn. R. Evid. 105 (emphasis added). Thus, Rule 105 contemplates a specific instruction regarding the permissible use of Rule 404(b) evidence only upon request....

We have allowed the standard CRIMJIG 2.01 and 3.16 instructions to be used for 20 years. Rule 105, which addresses the subject of limited purpose evidence ..., expressly requires such an instruction only "upon request." In these circumstances we cannot conclude that the trial court abused its discretion in failing to instruct the jury that the *Spreigl* evidence was admitted for the limited purpose of establishing identity.

Appellant urges us to join the Second and Eighth Circuit Courts of Appeal and adopt pattern instructions that inform the jury of the specific limited purpose for which Rule 404(b) evidence has been received. We have reviewed the pattern instructions of the Second and Eighth as well as other circuits to see how other courts handle the task of instructing juries on the proper use ·of Rule 404(b) evidence. The Second Circuit has endorsed an instruction regarding use of Rule 404(b) evidence that explains the limited purpose for which the evidence may be used. But consistent with Rule

105, the limited purpose instruction is only required if requested by the defendant.

Like the Second Circuit, the Eighth Circuit has adopted a model instruction for Rule 404(b) evidence that includes both what the evidence may and may not be used for.... We recognize that other federal circuit courts have endorsed similar pattern instructions to be given when requested....

The comments to CRIMJIGs 2.01 and 3.16 express the opinion of the Minnesota District Judges Association Committee on Criminal Jury Instruction Guides that "the instructions should not discuss possible inferences which may be drawn from particular evidence.... This should be left to the argument of the attorneys.... Accordingly this instruction is deliberately phrased in general language." 10 Minn. Dist. Judges Ass'n, *Minnesota Practice—Jury Instruction Guides, Criminal*, Comment to CRIMJIG 2.01 (4th ed. 1999). *See id.* Comment to CRIMJIG 3.16. We have not been made aware of an appellate decision that has echoed that concern. The federal appellate courts have taken a different approach by including the specific limited purpose for which Rule 404(b) evidence may be used in their pattern instructions.

*Id.* at 68–71 (citations omitted).

 By questioning the rationale behind the CRIMJIGs and by endorsing the practice of the federal courts, which require a specific limiting instruction when requested, *Broulik* can be read to require that when a defendant requests a limiting instruction, the district court must give such an instruction. As *Broulik* suggests, when requested by a defendant, CRIMJIG 2.01 and 3.16 must be modified to explain the limited purpose for which *Spreigl* evidence was admitted. *See* Minn. R. Evid. 105

(requiring district court, "upon request, [to] restrict the evidence [of other crimes] to its proper scope and instruct the jury accordingly"); Minn. R. Evid. 404(b) (prohibiting admission of other crimes unless offered "for other purposes," which may include "proof of motive [or] identity"). Accordingly, we hold that the district court committed error when it denied appellant's request for a specific limiting instruction in this case.

 Nevertheless, we further conclude that the court's error was harmless. When faced with an erroneous refusal to give jury instructions, a reviewing court must "examine all relevant factors to determine whether, beyond a reasonable doubt, the error did not have a significant impact on the verdict." *State v. Shoop*, 441 N.W.2d 475, 481 (Minn.1989) (citation omitted). If the error might have prompted the jury "to reach a harsher verdict than it might otherwise have reached," the defendant is entitled to a new trial.

While the district court here did not specifically instruct the jury that the *Spreigl* evidence could only be used to establish motive and identity, it did instruct the jury that the *Spreigl* evidence could only be considered for the limited purpose of determining whether appellant committed the charged offense and that he could not be convicted based on the previous occurrences. During closing arguments, the defense attorney and the prosecutor both explained that the *Spreigl* evidence could only be used to establish motive and identity. In addition, the evidence against appellant was strong: shortly before the offense occurred, the victim received repeated phone calls from someone threatening to damage her vehicles; the victim identified the caller as appellant; and when the victim heard the sound of windshields breaking and tires popping, she looked out her window and saw a man,

whom she positively identified as appellant, stepping away from her vehicles. We therefore conclude that, beyond a reasonable doubt, the district court's error in instructing the jury was harmless because it did not have a significant impact on the verdict. *See id.*

### 2. Sufficiency of Evidence

In considering a claim of insufficient evidence, this court's review is limited to a "painstaking" analysis of the record to determine whether the evidence, when viewed in the light most favorable to the conviction, is sufficient to allow the jurors to reach the verdict that they reached. *State v. Webb,* 440 N.W.2d 426, 430 (Minn. 1989). This court must assume that the jury believed the state's witnesses and disbelieved any contrary evidence. *State v. Moore,* 438 N.W.2d 101, 108 (Minn.1989). This court will not disturb the verdict if the jury, acting with due regard for the presumption of innocence and the requirement of proof beyond a reasonable doubt, could reasonably conclude that the defendant was guilty of the charged offense. *State v. Alton,* 432 N.W.2d 754, 756 (Minn. 1988).

A person who intentionally causes damage to another person's physical property without the latter person's consent is guilty of first-degree criminal damage to property if "the damage reduces the value of the property by more than $500 measured by the cost of repair and replacement." Minn.Stat. § 609.595, subd. 1(3) (2000).

Appellant argues that the evidence is insufficient to support his conviction because the victim only paid $500 to repair her vehicles. The victim was able to keep her repair costs down in part by doing the repair work herself. Adopting appellant's position would make the defendant's culpability depend upon the victim's ability and inclination to repair damaged property, which would be contrary to the policy underlying the criminal-damage-to-property and theft statutes. *See* Minn. Stat. Ann. § 609.595, 1963 advisory comm. cmt. (West 2003) (stating "gravity of the crime [of criminal damage to property] should turn upon the extent of the property damaged"); Minn.Stat. § 609.52, subd. 1(3) (2000) (defining value for purposes of theft as "the retail market value at the time of the theft"). Therefore, we conclude that when the victim of criminal damage to property performs the work necessary to repair the property, the value of the victim's labor can be considered in calculating the reduced value of the damaged property.

The victim spent $500 to repair both vehicles. This amount did not include any labor costs because the victim did the repair work herself. Because the parts alone cost $500, the total cost of repair and replacement was more than $500 if the victim's labor had any value. The evidence was sufficient to prove that the victim's labor had some value, and, therefore, that the damage to the victim's vehicles reduced their value by more than $500 measured by the cost of repair and replacement. The evidence was sufficient to support appellant's conviction for first-degree criminal damage to property.

## DECISION

The evidence was sufficient to support appellant's conviction for first-degree criminal damage to property. Although the district court erred in denying appellant's request for a specific limiting instruction on the purpose for which the *Spreigl* evidence was admitted, because the error was harmless, we affirm the conviction.

**Affirmed.**