*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-1870**

James Donald Dahl, petitioner,
Appellant,

vs.

State of Minnesota,
Respondent.

**Filed August 15, 2016
Affirmed
Johnson, Judge**

Stearns County District Court
File No. 73-CR-07-14970

Howard Bass, Bass Law Firm, PLLC, Burnsville, Minnesota (for appellant)

Lori Swanson, Attorney General, St. Paul, Minnesota; and

Janelle P. Kendall, Stearns County Attorney, Michael J. Lieberg, Assistant County Attorney, St. Cloud, Minnesota (for respondent)

Considered and decided by Johnson, Presiding Judge; Ross, Judge; and Stauber, Judge.

**U N P U B L I S H E D   O P I N I O N**

JOHNSON, Judge

In 2010, a Stearns County jury found James Donald Dahl guilty of criminal sexual conduct. In 2014, Dahl petitioned for postconviction relief on the ground that he received

ineffective assistance of counsel at trial. The postconviction court denied relief after a three-day evidentiary hearing. We affirm.

**FACTS**

In December 2007, St. Cloud police officers responded to a report of a physical altercation at Dahl's home, which he shared with P.M. Officers learned that Dahl was involved in a fight with R.O., P.M.'s adult son, who was living in the basement of the home temporarily. During the investigation, police officers interviewed C.L., P.M.'s 14-year-old daughter, who also was living in Dahl's home. C.L. told police officers that Dahl, who at that time was 56 years old, had raped her in August of that year and several other times since August.

The state charged Dahl with two counts of first-degree criminal sexual conduct, in violation of Minn. Stat. § 609.342, subds. 1(g), (h)(iii) (2006), one count of first-degree criminal sexual conduct with a dangerous weapon, in violation of Minn. Stat. § 609.342, subd. 1(d), and one count of third-degree criminal sexual conduct, in violation of Minn. Stat. § 609.344, subd. 1(b) (2006). Dahl retained an attorney to represent him. Before trial, Dahl twice moved for an *in camera* review of C.L.'s medical, school, human-services, and juvenile records. The district court granted the motions seeking *in camera* review but later ruled that the records were inadmissible. Dahl also filed a motion *in limine* in which he sought 28 rulings concerning evidence that was expected to be offered at trial. The district court granted relief with respect to most of the requests sought in the motion.

The case was tried to a jury on three days in January 2010. At the beginning of trial, Dahl's trial counsel deferred his opening statement until the defense's case. The state

2

called five witnesses in its case-in-chief, including R.O. and C.L. R.O. testified that Dahl had revealed that he was engaging in a sexual relationship with C.L. R.O. testified that he responded by grabbing Dahl by the neck, pushing him against the wall, and using a knife to threaten him. C.L. testified that Dahl sexually assaulted her in August 2007 and on more than ten other occasions between August and November of 2007. Dahl's trial counsel cross-examined both R.O. and C.L. and attempted to impeach their credibility. Dahl's trial counsel gave an opening statement and then called four witnesses on behalf of Dahl, including two of Dahl's relatives and Dahl himself. In Dahl's testimony, he denied engaging in any sexual conduct with C.L. The jury found Dahl guilty on all counts.

In February 2010, Dahl requested a *Schwartz* hearing to investigate possible juror misconduct. *See Schwartz v. Minneapolis Suburban Bus Co.*, 258 Minn. 325, 328, 104 N.W.2d 301, 303 (1960). The district court conducted a hearing at which it received testimony and oral arguments but concluded that there was no juror misconduct. Dahl also moved for a new trial on the grounds that the prosecutor engaged in misconduct and that the jury's verdict is not supported by the evidence. *See* Minn. R. Crim. P. 26.04, subd. 1(1). The district court denied the motion for a new trial in its entirety.

In July 2010, the district court sentenced Dahl to 173 months of imprisonment on count 3. An attorney in the office of the state public defender pursued a direct appeal on Dahl's behalf. This court affirmed, and the supreme court denied Dahl's petition for further review. *See State v. Dahl*, 2011 WL 4435325 (Minn. App. Sept. 26, 2011), *review denied* (Minn. Dec. 21, 2011).

3

In March 2014, Dahl petitioned for postconviction relief. His petition, which was signed by another privately retained attorney, alleged that Dahl had received ineffective assistance from both his trial counsel and his appellate counsel. At approximately the same time, Dahl's trial counsel was appointed to the Seventh Judicial District Court. Dahl moved to disqualify all Seventh District judges. The chief judge of the Seventh District granted the motion. A judge of another judicial district was assigned to the postconviction action.

In January 2015, the postconviction court conducted a three-day evidentiary hearing on Dahl's postconviction claims. Dahl called five witnesses: his trial counsel, his appellate counsel, two expert criminal-defense attorneys, and one of his sisters. Dahl also testified on his own behalf. The state called only one witness: Dahl's trial counsel. The postconviction court denied Dahl's petition on the merits in a 52-page order. Dahl appeals.

## D E C I S I O N

Dahl argues that the postconviction court erred by denying his petition for postconviction relief. On appeal, Dahl challenges the postconviction court's ruling only with respect to his representation at trial; he does not challenge the postconviction court's ruling with respect to his representation by an assistant state public defender on direct appeal.

"In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI; *see also* Minn. Const. art. I, § 6. The right to the assistance of counsel includes the right to the *effective* assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 2063 (1984). To

4

prevail on a claim of ineffective assistance of counsel, a petitioner "must affirmatively prove [1] that his counsel's representation 'fell below an objective standard of reasonableness' and [2] 'that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Gates v. State*, 398 N.W.2d 558, 561 (Minn. 1987) (quoting *Strickland*, 466 U.S. at 688, 694, 104 S. Ct. at 2064, 2068). In general, "there is a strong presumption that counsel's performance fell within a wide range of reasonable assistance." *Bruestle v. State*, 719 N.W.2d 698, 705 (Minn. 2006) (quotation omitted). "We give trial counsel wide latitude to determine the best strategy for the client." *State v. Nicks*, 831 N.W.2d 493, 506 (Minn. 2013). Thus, an attorney's "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690, 104 S. Ct. at 2066.

When reviewing a postconviction court's denial of a postconviction petition alleging ineffective assistance of counsel, this court applies a clear-error standard of review to the postconviction court's factual findings, a *de novo* standard of review to the postconviction court's legal conclusions, and an abuse-of-discretion standard of review to the postconviction court's ultimate decision whether to grant relief. *Nicks*, 831 N.W.2d at 503; *Riley v. State*, 819 N.W.2d 162, 167 (Minn. 2012); *Davis v. State*, 784 N.W.2d 387, 390 (Minn. 2010).

Dahl argues that his trial counsel provided him with ineffective assistance in six different ways, which we will consider and discuss in the manner and order in which he presents them in his brief.

**A.     Alleged Failure to Investigate and Present Dahl's Defense**

Dahl contends that his trial counsel provided him with ineffective assistance of counsel by not investigating two potentially favorable witnesses and not developing evidence that Dahl had erectile dysfunction.

"[Defense] counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary.     In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066.  A postconviction court must "assess the evidence that a proper investigation would have discovered and determine whether that evidence likely would have changed the outcome of the trial." *Gates*, 398 N.W.2d at 562.

**1.     Favorable Witnesses**

Dahl contends that L.B., who was his neighbor, and D.G., who is his sister, would have been favorable witnesses at trial but that his trial counsel did not do an adequate investigation on which to base a decision whether to call them as witnesses.  Dahl contends that L.B. and D.G. would have testified at trial that they observed Dahl and C.L. together and that C.L. did not appear uncomfortable around Dahl.

The postconviction court found that Dahl's trial counsel was unaware of D.G. because Dahl did not give him sufficient information about her.  The postconviction court found that Dahl's trial counsel knew of L.B. but did not pursue the possibility of calling him as a witness because he had a prior criminal-sexual-conduct conviction and was facing

6

additional charges of the same type, which might have undermined his credibility. The postconviction court also noted that Dahl's trial counsel's investigator may have actually interviewed L.B. The postconviction court concluded that Dahl's trial counsel did not fail to make a reasonable investigation with respect to these two persons.

Dahl challenges the postconviction court's finding that his trial counsel was unaware of D.G. Dahl also relies on the opinion of his expert witness in contending that the lack of further investigation into L.B. and D.G. was objectively unreasonable. This court must defer to the postconviction court's findings to the extent that they resolve disputed questions of fact, especially if the factfinder resolves those factual issues based on the credibility of witnesses. *See Miles v. State*, 840 N.W.2d 195, 201 (Minn. 2013). Without knowledge that Dahl's sister might have possessed helpful information, Dahl's trial counsel could not have conducted an investigation into whether to call her as a witness. Dahl's trial counsel's reasons for not pursuing the possibility of calling L.B. as a witness are objectively reasonable. His decision to not call L.B. as a witness is a matter of trial strategy, which courts will not second-guess so long as the strategy is reasonable. *Ives v. State*, 655 N.W.2d 633, 636 (Minn. 2003). In any event, evidence that C.L. did not appear uncomfortable around Dahl would have limited probative value. The postconviction court's findings are not clearly erroneous with respect to the investigation of L.B. and D.G. as potential defense witnesses.

### 2. Erectile Dysfunction

Dahl contends that he suffered from erectile dysfunction at the time of his offense and that he told his trial counsel about the issue but that trial counsel did not conduct an

adequate investigation into the issue and did not present extrinsic evidence on the issue at trial. Dahl contends that such evidence would have shown that he was incapable of committing the crime of which he was convicted.

The postconviction court found that Dahl told his trial counsel that he had erectile dysfunction, that trial counsel told Dahl to obtain the medical records that would corroborate his claim, and that Dahl never obtained the medical records. The postconviction court found that it was reasonable for trial counsel to ask Dahl to obtain the records because Dahl had obtained other records. The postconviction court further found that Dahl's trial counsel reasonably doubted the truth of Dahl's claim and appropriately refrained from further investigation out of concern that extrinsic evidence might undermine Dahl's trial testimony that he had erectile dysfunction. The postconviction court concluded that Dahl's trial counsel did not fail to make a reasonable investigation with respect to the issue of erectile dysfunction and that the absence of such evidence likely did not affect the verdict.

Dahl relies on the opinion of his expert witness in contending that the lack of an investigation into erectile dysfunction was objectively unreasonable. Dahl has not established that the postconviction court clearly erred by finding that trial counsel reasonably relied on Dahl to obtain his own medical records and reasonably refrained from attempting to develop evidence without medical records. The postconviction court noted that Dahl did not present any new evidence at the postconviction hearing to prove that he actually had erectile dysfunction or that medical records existed. The postconviction court's findings are not clearly erroneous with respect to the issue of erectile dysfunction.

8

**B.      Alleged Failure to Subpoena and Call as Witness Victim's Father**

Dahl contends that his trial counsel provided him with ineffective assistance of counsel by not serving a subpoena on C.L.'s adoptive father, C.J.L., for purposes of investigation and by not calling him as a defense witness at trial.

"Which witnesses to call at trial and what information to present to the jury are questions that lie within the proper discretion of the trial counsel.  Such trial tactics should not be reviewed by an appellate court, which, unlike the counsel, has the benefit of hindsight."  *State v. Jones*, 392 N.W.2d 224, 236 (Minn. 1986).  "Generally, we will not review ineffective assistance of counsel claims based on trial strategy."  *Sanchez-Diaz v. State*, 758 N.W.2d 843, 848 (Minn. 2008) (citing *Opsahl v. State*, 677 N.W.2d 414, 421 (Minn. 2004)).

The postconviction court found that Dahl's trial counsel's investigator contacted C.J.L. but that he refused to cooperate.  The postconviction court also found that Dahl was aware of C.J.L.'s refusal to cooperate.  The postconviction court further found that trial counsel reasonably did not pursue the investigation further because calling C.J.L. to the stand was unlikely to be fruitful.  The postconviction court also noted that "subpoenaing a hostile and unwilling witness for the suggested purposes potentially implicates considerations of abuse of process and violation of the Rules of Professional Conduct."  The postconviction court noted that Dahl's expert witness suggested at the postconviction hearing that, given the circumstances, it was reasonable for Dahl's trial counsel to not call C.J.L. as a witness without knowing whether he would give favorable testimony.

9

Dahl contends that his trial counsel unreasonably declined to subpoena C.J.L. and that C.J.L. would have assisted the defense by testifying that C.L. is prone to lying and stealing. Dahl's contention fails to address the fact that C.J.L. refused to cooperate with his trial counsel's investigator, which caused trial counsel to believe that C.J.L. would not have testified favorably to the defense. Dahl's contention also fails to overcome the postconviction court's observation that subpoenaing a hostile witness solely for purposes of investigation might be improper. Dahl's contention further fails to acknowledge that his own expert witness suggested that it was reasonable for his trial counsel to not call C.J.L. as a witness without knowing whether he would give favorable testimony. A trial attorney's reasoned decision about whom to call as witnesses is the type of strategic decision that cannot be second-guessed in postconviction proceedings. *See Ives*, 655 N.W.2d at 636. The postconviction court's findings are not clearly erroneous with respect to the issue of subpoenaing C.J.L. and calling him as a witness.

## C. Alleged Failure to Effectively Cross-Examine Accusers

Dahl contends that his trial counsel provided him with ineffective assistance of counsel by not effectively cross-examining C.L. and R.O.

"[M]atters of trial strategy, including which witnesses to call, what defenses to raise at trial, and specifically how to proceed at trial, will not be reviewed later by an appellate court as long as the trial strategy was reasonable." *Id.* Trial strategy includes decisions about whether and how to introduce impeachment evidence in cross-examination. *See Reed v. State*, 793 N.W.2d 725, 736 (Minn. 2010) (considering argument that trial counsel should have impeached witnesses with certain evidence).

Dahl contends that his trial counsel should have cross-examined C.L. more extensively by questioning her about her improper use of Dahl's credit card, threats she had made against Dahl, and her juvenile-delinquency record. The postconviction court found that C.L. used Dahl's credit card to purchase music but that the total amount was relatively small (approximately $25) and that Dahl had made similar purchases for C.L., which the state might have characterized as "grooming." The postconviction court found that Dahl's trial counsel reasonably refrained from cross-examining C.L. about her music purchases because she likely would have denied it and because the total value of the purchases was insignificant. The postconviction court also found that Dahl had told his trial counsel that C.L. had said to Dahl, "I can get you in big trouble, buddy-boy." But the postconviction court found that Dahl's trial counsel reasonably refrained from questioning C.L. about the statement because it could be understood in a way that would further incriminate Dahl. The postconviction court also found that C.L. had no record of juvenile delinquency adjudications or criminal convictions and that the trial court likely would not have admitted evidence that C.L. had driven her mother's vehicle without permission. After examining the record, we conclude that the postconviction court did not clearly err in its findings of fact that Dahl's trial counsel made reasonable strategy decisions when cross-examining C.L. and that the more extensive cross-examination suggested by Dahl likely would not have affected the verdict.

Dahl also contends that his trial counsel should have cross-examined R.O. more extensively by questioning him about his plea agreement in a related case, the fact that he was on probation, his involvement in a hit-and-run accident while on probation, and

11

whether he was engaged in a sexual relationship with C.L. The postconviction court found that Dahl's trial counsel reasonably did not cross-examine R.O. about his plea to second-degree assault for fighting with Dahl because the prosecutor already had questioned R.O. about the subject on direct examination, and the postconviction court found that further cross-examination would not have affected the verdict. The postconviction court found that Dahl's trial counsel reasonably did not cross-examine R.O. about being on probation for DWI because it was relatively insignificant and would not have affected the verdict. The postconviction court found that Dahl's trial counsel reasonably did not cross-examine R.O. about the alleged hit-and-run for similar reasons. And the postconviction court found that Dahl's trial counsel reasonably did not cross-examine R.O. as to whether he and C.L. had a sexual relationship because the prosecutor already had asked the question on direction examination and R.O. had denied it and because Dahl's trial counsel had planned to address the issue only briefly during the state's case and to introduce the counter-accusation more extensively in Dahl's testimony. The postconviction court found that all of these decisions were reasonable decisions of trial strategy. After examining the record, we conclude that the postconviction court did not clearly err in its finding of fact that Dahl's trial counsel made reasonable strategy decisions when cross-examining R.O.

D.      **Alleged Failure to Present Evidence Favorable to Dahl**

Dahl contends that his trial counsel provided him with ineffective assistance of counsel by not presenting evidence that would have portrayed him in a positive or sympathetic light, such as evidence that he was injured in an automobile accident in 2006 and that he paid some of C.L.'s living expenses.

12

The postconviction court found that Dahl's trial counsel elicited evidence about Dahl's occupation and family, a brief mention of Dahl's automobile accident, and the fact that Dahl paid the bills incurred by the persons living in his house. The postconviction court also found that Dahl's trial counsel did not fail to introduce favorable evidence of the type that might "humanize" Dahl. The postconviction court noted that Dahl's trial counsel called J.D., one of Dahl's sisters, to "describe [Dahl's] personality and generous nature" and that trial counsel elicited testimony that Dahl made purchases for R.O. because he is a "nice guy." The postconviction court also noted that Dahl's claims go to matters of trial strategy. Dahl's appellate brief does not challenge the postconviction court's findings and does not identify any other evidence of this type that Dahl's trial counsel failed to introduce. We agree that the issues raised by Dahl are classic matters of trial strategy. *See State v. Voorhees*, 596 N.W.2d 241, 255 (Minn. 1999). Thus, the postconviction court did not clearly err in its finding that Dahl's trial counsel was not deficient in his presentation of evidence favorable to Dahl.

## E.     Alleged Failure to Seek Remedy for Juror Misconduct

Dahl contends that his trial counsel provided him with ineffective assistance of counsel by not promptly notifying the district court of potential juror misconduct during the trial. Dahl contends that he and two of his sisters overheard a group of jurors talking about his case at a restaurant on the second day of trial, that they told trial counsel about it, and that trial counsel took no action at that time.

A defendant may pursue a motion for a mistrial based on juror misconduct by requesting a *Schwartz* hearing. *See Schwartz*, 258 Minn. at 328, 104 N.W.2d at 303. To

13

establish juror misconduct, a party must make a *prima facie* showing of juror misconduct. *State v. Pederson*, 614 N.W.2d 724, 730 (Minn. 2000). To make a *prima facie* showing, "a defendant must submit sufficient evidence which, standing alone and unchallenged, would warrant the conclusion of jury misconduct." *Id.* (quoting *State v. Larson*, 281 N.W.2d 481, 484 (Minn. 1979)).

The postconviction court found that Dahl and two sisters, J.D. and C.J., returned from lunch on the second day of trial and told Dahl's trial counsel that they saw jurors at the restaurant where they ate. The postconviction court found that Dahl and his sisters informed Dahl's trial counsel of the incident, that trial counsel explained to Dahl the opportunity to request a *Schwartz* hearing, that Dahl said that he had not heard the substance of the jurors' conversations, and that Dahl said that he did not want a different jury. The postconviction court also found that, after the guilty verdict, Dahl told his trial counsel that one of his sisters had heard the jurors talking about him and the allegation that he had possessed a gun. The postconviction court further found that trial counsel then telephoned Dahl's sisters, who informed trial counsel that they had not heard anything in particular. The postconviction court further found trial counsel nonetheless requested a *Schwartz* hearing, at which Dahl testified that his sisters did not hear the jurors' conversation. The postconviction court rejected Dahl's postconviction claim that, contrary to his earlier testimony, one of his sisters did hear the jurors' conversation. The postconviction court expressly determined that trial counsel was more credible, in part because Dahl admitted during trial that he has a poor memory. Accordingly, the postconviction court found that trial counsel properly did not file a *Schwartz* motion on the

14

second day of trial because he could not have established a *prima facie* case of juror misconduct.

On appeal, Dahl contends that his trial counsel unreasonably failed to move for a *Schwartz* hearing on the second day of trial. His argument is based on the evidence that he introduced at the postconviction hearing. But the postconviction court specifically found Dahl's testimony to be less credible than trial counsel's testimony. Given the information available to trial counsel on the second day of trial, as found by the postconviction court, there is no clear error in the postconviction court's finding that trial counsel reasonably refrained from moving for a *Schwartz* hearing on the second day of trial.

## F.     Alleged Failure to Zealously Represent Dahl

Dahl contends that his trial counsel provided him with ineffective assistance of counsel by not zealously representing him at trial. Specifically, Dahl contends that his trial counsel's performance was deficient because he reserved his opening statement until after the state rested its case and then made an opening statement that was too brief, because he made a poor closing argument, because he did not adequately prepare Dahl for his trial testimony, and because he generally did not present a theory of the case.

The postconviction court found that Dahl's trial counsel initially reserved his opening statement and, after the state rested, made an opening statement consisting of four sentences. The postconviction court found that trial counsel's strategy with respect to his opening statement was reasonable in light of uncertainty about what evidence the state would introduce and uncertainty as to whether Dahl would testify and, if so, the extent of his testimony.

15

The postconviction court found that trial counsel's strategy with respect to his closing argument was reasonable in that he attacked the state's evidence of the firearm and attempted to show that doubts about the firearm raised doubts about the entire case. The postconviction court also found that trial counsel made a reasonable effort to attack the credibility of both C.L. and R.O. The postconviction court further found that trial counsel argued that Dahl got into trouble because of a "big heart" and that he was physically incapable of the alleged conduct. Dahl's contentions on appeal do not undermine the postconviction court's finding that his trial counsel's strategy decisions with respect to his closing argument were reasonable. *See Sanderson v. State*, 601 N.W.2d 219, 226 (Minn. App. 1999) (stating that counsel's strategic decisions concerning opening statement and closing argument "should not be second-guessed"), *review granted* (Minn. Jan. 18, 2000) *and review denied* (Minn. Mar. 28, 2000).

The postconviction court found that Dahl's trial counsel and Dahl met in person at least 15 times and spoke by telephone at least 30 times before trial. The postconviction court found that trial counsel began preparing Dahl for trial approximately eight months before trial, to the point that Dahl wrote a letter to his trial counsel complaining about a practice session. The postconviction court also found that trial counsel met with Dahl at trial counsel's office at 6:30 a.m. on the third day of trial, the day of Dahl's testimony. The record corroborates these findings of historical fact, which support the postconviction court's finding that trial counsel did not fail to prepare Dahl for trial.

The postconviction court found that Dahl's trial counsel's overall presentation of a theory of the defense was reasonable in light of the circumstances. The postconviction

16

court recited trial counsel's testimony that he was planning on introducing the defense theory primarily through Dahl's testimony but that when he met with Dahl in the early morning of the third day of trial, he observed that Dahl was not as "loquacious, confident, and articulate" as he had been in the past but, rather, "was a completely different person" in that he was a "'bundle' (of nerves)" and no longer wanted to testify. The postconviction court noted that Dahl eventually decided to testify but that trial counsel wanted to avoid problems by limiting his testimony as much as possible. Dahl contradicted his trial counsel's testimony at the postconviction hearing by testifying that his trial counsel was not fully engaged on that particular day. But the postconviction court ultimately found that trial counsel was unable to fully present the defense theory that had been prepared because of Dahl's state of mind and that "it was reasonable [for trial counsel] to limit [Dahl's] time on the witness stand." Again, this court must defer to the postconviction court's findings to the extent that they resolve disputed questions of fact, especially if the factfinder resolves those factual issues based on the credibility of witnesses. *See Miles*, 840 N.W.2d at 201. Dahl's contention that his trial counsel failed to present a reasonable theory of the defense does not overcome our standard of review. In any event, because the Sixth Amendment is not concerned with the selection of one among several reasonable strategies, Dahl cannot establish that his trial counsel rendered ineffective assistance by not developing and presenting a theory of the defense. *See Voorhees*, 596 N.W.2d at 255 (stating that strategic decisions concerning theory of the case are entitled to great deference).

In sum, the postconviction court did not err by denying Dahl's petition for postconviction relief.

**Affirmed.**